Thos D. MURPHY, Jr., Ray Hawkins, Trudi Hestand, and Tracy Hawkins, individually and on behalf of Colonial Food Stores, Inc. and Hawkins–Rochester–Murphy, Inc., and the Bankruptcy Estate of Louis Rochester, Intervenor, Petitioners,

v.

Robert CAMPBELL, Rory McLaughlin, Joe Fleckinger, and Chuck Schmidt, individually and d/b/a agents for Deloitte & Touche, a partnership, formerly known as Touche Ross & Co., a partnership, and as agents for Touche Ross & Co., and Touche Ross & Co., Respondents.

No. 96–0079.

Supreme Court of Texas.

Argued Sept. 5, 1996.

Decided Dec. 11, 1997.

Rehearing Overruled May 8, 1998.

James Winston Krause, Cherry K. Bounds, Daniel M. Grant, Austin, John H. Green, Jr., Odessa, for petitioners.

Charles J. Muller, III, David Langdon Doggett, Farley P. Katz, Anthony E. Rebollo, San Antonio, for respondents.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, OWEN and BAKER, Justices, joined.

Plaintiffs in this case complain that their accountants gave them faulty tax advice. Plaintiffs assert causes of action for negligence, fraud, breach of implied warranty, and violations of the Texas Deceptive Trade Practices—Consumer Protection Act, TEX. BUS. & COM.CODE §§ 17.41–.63. Principal among the several issues before us is the proper application of limitations to plaintiffs' claims. The district court granted defendants summary judgment. The court of appeals affirmed except as to plaintiffs' fraud claim, which it remanded. *Bankruptcy Estate of Louis Rochester v. Campbell*, 910 S.W.2d 647 (Tex.App—Austin 1995). We conclude that summary judgment was proper on all plaintiffs' claims.

## I

Colonial Food Stores, Inc. operated more than 125 convenience stores, mostly in West Texas. Its three major stockholders—Thomas D. Murphy, Jr., Ray Hawkins, and Louis Rochester—wanted to sell the business if they could each receive $2 million net of taxes or other obligations. The price offered by the most promising purchaser, National Convenience Stores, would not yield the three stockholders that amount unless Colonial's federal tax obligation was based on payment of depreciated cost for Colonial's equipment rather than its higher fair market value. By this allocation of the purchase price Colonial could avoid recognizing any taxable gain on the sale of its equipment.

Colonial's accountant and auditor, Touche Ross & Co., advised Colonial and its stockholders concerning the tax consequences of the sale at a meeting on April 27, 1983. Although the stockholders were aware that the Internal Revenue Service would probably challenge the allocation of the purchase price to equipment, they contend that Touche Ross advised that the allocation was proper. Within a few days the transaction with NCS closed, and about a year later, on April 25, 1984, Colonial dissolved, distributing all its assets and liabilities to its stockholders (the

three named above and a trust for Hawkins' two children). The IRS audited Colonial's tax returns and on October 27, 1986, advised Colonial's stockholders that it did not approve the allocation of sales proceeds to equipment and that it considered additional taxes to be due. On June 11, 1987, the IRS issued a formal deficiency notice.

Colonial's stockholders filed suit in the United States Tax Court on September 8, 1987, to protest the IRS ruling. Colonial's stockholders had an appraisal of Colonial's equipment prepared that showed a value less than depreciated cost, supporting Touche Ross's advice. Nevertheless, Colonial's stockholders settled with the IRS before trial, agreeing to pay $735,596.98 in taxes plus interest. The Tax Court entered a stipulated final decision on November 16, 1989. On April 5, 1990, the IRS assessed the taxes and interest.

On June 11, 1991, Colonial's stockholders ("plaintiffs") sued Touche Ross and others (collectively, "Touche Ross"), complaining of Touche Ross's tax advice concerning the tax consequences of the Colonial sale and the money to be received by plaintiffs. Plaintiffs pleaded that Touche Ross was negligent, was fraudulent, breached an implied warranty that it would perform its services in a good and workmanlike manner, and violated the DTPA. Plaintiffs later amended their pleadings to allege that Touche Ross had also defrauded them by not disclosing that it was advising NCS at the same time it was advising Colonial.

Touche Ross moved for summary judgment on all plaintiffs' claims on the grounds that they were barred by limitations and that plaintiffs suffered no damages. Additionally, Touche Ross argued that the warranty claim should fail because the law recognizes no such cause of action, and that the fraud claim should fail because the evidence established that Touche Ross made no fraudulent misrepresentation. The district court granted Touche Ross's motion without specifying the reasons, and plaintiffs appealed.

The court of appeals held that all plaintiffs' causes of action accrued on the date the IRS sent plaintiffs a deficiency notice, which was

exactly four years before plaintiffs sued. Thus, the court concluded that plaintiffs' negligence, warranty, and DTPA claims, all subject to two-year statutes of limitations, were barred, but that plaintiffs' fraud claim, subject to a four-year limitations period, was not. The court did not address Touche Ross's argument that the evidence established that it made no misrepresentation. The court determined that fact issues remained whether plaintiffs had individual claims against Touche Ross distinct from Colonial's claim. (Because Colonial did not sue within three years of its dissolution, its claim was barred. TEX.REV.CIV. STAT. ANN. art. 1396–7.12 (Vernon 1997).) Consequently, the court of appeals remanded only plaintiffs' fraud claim and affirmed the balance of the district court's judgment. 910 S.W.2d 647.

Plaintiffs and Touche Ross both appealed to this Court.

## II

We first consider several matters which could, but do not, eliminate the limitations issues, but which do narrow those issues.

### A

■ Touche Ross argues that plaintiffs lack standing to assert their claims because any wrong Touche Ross did was to Colonial, not its stockholders. We disagree.

In *Wingate v. Hajdik,* we stated:

A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.

Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders. Generally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock. This rule is based on the principle that where such an injury occurs each shareholder suf-

fers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer. Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporation's creditors, and for proportional distributions to the stockholders as dividends, or for such other purposes as the directors may lawfully determine.

This rule does not, of course, prohibit a stockholder from recovering damages for wrongs done to him individually "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." However, to recover individually, a stockholder must prove a personal cause of action and personal injury.

795 S.W.2d 717, 719 (Tex.1990) (citations omitted). Applying these principles, we held that one corporate stockholder could not recover damages from another for misappropriation of corporate assets.

These same principles provide plaintiffs standing in the present case. Touche Ross counseled not only Colonial but its stockholders. The tax treatment of the sale was less important to Colonial, which contemplated dissolution, than to its stockholders, upon whom the effects of tax treatment would directly fall. The three major stockholders were unwilling to sell Colonial's assets to NCS unless they received a minimum net amount as a result. Touche Ross undertook to advise not only Colonial but its stockholders, and the stockholders suffered a direct loss as a result of the IRS ruling. In these circumstances, plaintiffs have individual causes of action against Touche Ross separate from Colonial's.

### B

■ Touche Ross argues that Texas law does not recognize a cause of action for breach of an implied warranty of professional services. We agree.

In *Dennis v. Allison*, 698 S.W.2d 94, 96 (Tex.1985), we held that it was unnecessary to extend a cause of action for breach of an implied warranty to a patient physically abused by her psychiatrist because she had other adequate causes of action available to her. We reiterated in *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 439 (Tex.1995), that "an implied warranty will not be judicially imposed unless there is a demonstrated need for it."

There is no more need for an additional remedy for accounting malpractice than there is for medical malpractice. A plaintiff may obtain full redress in an action for negligence or breach of contract. In addition, the DTPA provides relief in certain circumstances. TEX. BUS. & COM.CODE § 17.49(c)-(d). Accordingly, we hold that there is no cause of action for breach of an implied warranty of accounting services. Touche Ross was entitled to summary judgment on plaintiffs' warranty claim.

### C

██ Touche Ross argues that the summary judgment evidence establishes that it made no fraudulent misrepresentation. We agree.

Although plaintiffs claimed Touche Ross misrepresented that the sales price allocation "would withstand an Internal Revenue Service audit", no evidence supports this assertion. In fact, the evidence is to the contrary. The record establishes that plaintiffs all knew that an IRS audit was likely and that the IRS would probably challenge the sales price allocation. Apart from Touche Ross's denial that it made any misrepresentations concerning the possibility of eventual taxation, the only evidence on the subject is plaintiff Hawkins' testimony that "there was not any discussion about whether the allocation would be respected by the IRS". Plaintiff Hawkins stated in an affidavit that his understanding was that the allocation would withstand audit, but he does not ascribe the basis of that understanding to anything Touche Ross said or did.

Furthermore, Touche Ross's advice that the price allocated for the equipment should be its depreciated cost was not false. In-deed, plaintiffs obtained an appraisal supporting Touche Ross's advice and continue to believe that the IRS overvalued the equipment. Plaintiffs' complaint is not that Touche Ross undervalued the equipment, but that it did not advise them properly about the ultimate treatment of the sale and the tax consequences.

Plaintiffs also complain that Touche Ross did not disclose its relationship with NCS, but the evidence establishes that plaintiffs were not harmed by that nondisclosure. Plaintiffs assert that their damages were caused entirely by Touche Ross's bad advice, not by any conflict of interest Touche Ross may have had. Even assuming that such a conflict of interest existed, it provided only a motive for Touche Ross's bad advice. Any nondisclosure, standing alone, was not fraud.

In short, plaintiffs' claims are for malpractice, not fraud. Touche Ross was entitled to summary judgment on plaintiffs' fraud claims.

### D

██ Finally, Touche Ross argues that the evidence establishes that plaintiffs have suffered no damages because they received full fair market value for Colonial. We disagree. The argument simply ignores plaintiffs' assertion that they would not have sold Colonial at all unless the three major stockholders received $2 million apiece. If plaintiffs were misled by Touche Ross's advice into thinking that they would receive more, the fact that they received all Colonial was worth does not vitiate their complaints against Touche Ross.

### III

We are left with the issue of applying limitations to accounting malpractice claims involving tax advice. Touche Ross argues that such claims accrue when the taxpayer knows or should know that the advice he received was faulty, and no later than the IRS's issuance of a formal deficiency notice, triggering the taxpayer's right to sue in the Tax Court. Plaintiffs argue that such claims do not accrue until any litigation is completed

and the IRS has issued an assessment of taxes. We agree with Touche Ross.

## A

■ The parties agree, and we hold, that a common-law action for accounting malpractice is subject to section 16.003 of the Civil Practice and Remedies Code, which provides that suit must be brought "not later than two years after the day the cause of action accrues." Since the statute does not specify when accrual occurs, we must make that determination.

■ In *S.V. v. R.V.*, we explained: "As a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." 933 S.W.2d 1, 4 (Tex.1996)(citing *Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 262 (Tex.1994), and *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438, 440 (1940)). This "legal injury" rule is often traced to *Houston Water–Works Co. v. Kennedy*, 70 Tex. 233, 8 S.W. 36 (1888).

> In *Kennedy*, the defendant cut an arch in plaintiff's building while installing a water pipe in 1884. The arch, being concealed, was not discoverable until it eventually caused the building to settle and crack. Plaintiff brought his negligence action in 1887, three years after the alleged negligence but within two years after the injury became manifest. The Court concluded that the action was barred by limitations:
>
>> If ... the act of which the injury was the natural sequence was a legal injury,—by which is meant an injury giving cause of action by reason of its being an invasion of a plaintiff's right,—then, be the damage however slight, limitation will run from the time the wrongful act was committed, and will bar an action for any damages resulting from the act.... [A] mere want of knowledge by the owner of injury to his property does not prevent the running of the statute.
>
> 8 S.W. at 37–38. In other words, because the negligently cut arch constituted a legal injury, limitations began to run immediately.

*Trinity River Authority*, 889 S.W.2d at 262 (quoting *Kennedy*, 8 S.W. at 37–38).

■ "We have not applied [the legal injury] rule without exception, however, and have sometimes held that an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *S.V.*, 933 S.W.2d at 4. This exception, which we call the "discovery rule", applies in cases of fraud and fraudulent concealment, and in other cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex.1996); *S.V.*, 933 S.W.2d at 6. We explained the inherently-undiscoverable requirement in S.V. as follows:

> To be "inherently undiscoverable", an injury need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise. Nor does "inherently undiscoverable" mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence.

933 S.W.2d at 7.

■ A person suffers legal injury from faulty professional advice when the advice is taken. However, the discovery rule may apply to delay accrual of a cause of action complaining of such advice because of the difficulty a lay person has in knowing of the fault in the advice. Legal malpractice, for example, is inherently undiscoverable because " '[i]t is unrealistic to expect a layman client to have sufficient legal acumen to perceive an injury at the time of the negligent act or omission of his attorney.' " *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex.1988) (citation omitted); *S.V.*, 933 S.W.2d at 6. Thus, the accrual of a legal malpractice

claim, including a claim for faulty tax advice, is governed by the discovery rule. The same rule should apply whether the advisor is a lawyer or an accountant. It is most unlikely that a client would know that tax advice was faulty at the time he received it. Indeed, the very reason to seek expert advice is that tax matters are often not within the average person's common knowledge. We thus conclude that accounting malpractice involving tax advice is inherently undiscoverable.

Also, the injury flowing from faulty tax advice is objectively verifiable. When, as here, the taxing authority prevails in tax court, the fact of injury is indisputable. Similarly, the settlement or payment of a tax claim that results from faulty professional advice results in a clear, objectively verifiable injury.

Because an accounting malpractice claim involving tax advice is inherently undiscoverable, and injury is objectively verifiable, the discovery rule applies. Such a claim accrues when the claimant knows or in the exercise of ordinary diligence should know of the wrongful act and resulting injury. The same rule applies by statute in DTPA claims. TEX. BUS. & COM.CODE § 17.565.

**B**

 As in most discovery rule cases, the date a particular person becomes charged with knowledge of accounting malpractice involving tax advice depends upon the circumstances. The evidence in the present case reflects procedures involving federal income tax claims. The taxpayer learns something of the IRS's position during an audit. The report of the auditor's findings provides the taxpayer additional information, although it does not represent the IRS's final position; the taxpayer may protest to the IRS appeals office within thirty days of receiving the auditor's report. Only after all administrative appeals have been exhausted does the IRS issue a formal deficiency notice. Within ninety days of that notice the taxpayer may challenge the IRS's position in Tax Court. If the taxpayer does not do so, or when that litigation is concluded, the IRS assesses any tax due. *See generally* 4 BORIS I. BITTKER & LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME ESTATES AND GIFTS ch. 111–113 (2d ed.1992); MICHAEL I. SALTZMAN, IRS PRACTICE & PROCEDURE, ch. 10 (2d ed.1991).

 Plaintiffs argue that not until this last step in the process, when the taxpayer's liability is certain, does an action for malpractice involving tax advice accrue. But under the discovery rule, such an action accrues, not when injury becomes certain, but when the claimant should know of his injury. This cannot occur later than the receipt of the deficiency notice, when the IRS takes a final, formal position. That was our holding in *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967). Although we referred in that case to the IRS's "assessment", it is apparent from the recitation of the facts and the timing of the events in that case that we did not mean the final assessment but rather, the earlier deficiency notice. *See Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex.App.—Austin 1985, no writ)(describing the deficiency assessment in *Atkins* as coming before judicial review and not representing inevitable injury to the taxpayer). The California Supreme Court has also referred to the deficiency notice as an assessment. *International Engine Parts, Inc. v. Feddersen & Co.*, 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 159, 888 P.2d 1279, 1288 (1995)(en banc)(citing *Atkins*).

But a taxpayer may know his advice was faulty long before he receives a deficiency notice. For example, if a taxpayer sought other opinions upon receipt of an audit notice, or even earlier, the information obtained might put him on notice that the advice he received was wrong. No Texas court has read *Atkins* to hold that a cause of action for faulty advice never accrues until the taxpayer receives a deficiency notice. *See Hoover v. Gregory*, 835 S.W.2d 668, 673 (Tex.App.—Dallas 1992, writ denied) ("We, however, read *Atkins* as establishing a general rule that a taxpayer's cause of action accrues on a fact specific basis when he discovers a risk of harm to his economic interests, whether that be at the time of assessment or otherwise."); *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 641–642 (Tex.App.—Houston [14th Dist.] 1994, writ denied)(quoting *Hoover*); *Sutton v. Mankoff*, 915 S.W.2d 152, 157 (Tex.App.—

Fort Worth 1996, writ denied)(citing *Hoover* and *Ponder*).

Here the evidence does not establish when plaintiffs knew or should have known that Touche Ross's advice was flawed. As the deficiency notice exactly four years before plaintiffs filed suit marked the latest date on which their malpractice action could have accrued, their negligence and DTPA claims are barred by the two-year statute of limitations unless the running of limitations was tolled by the Tax Court litigation, the issue to which we now turn.

## C

Plaintiffs contend that the tolling rule in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex.1991), applies in the present case. We disagree.

In *Hughes*, plaintiffs claimed that their lawyer erred in failing to name them temporary managing conservators of the child they planned to adopt. When the biological mother had a change of heart, she sued for custody of the child, and plaintiffs counterclaimed for termination of her rights. The court of appeals reversed a judgment for plaintiffs, holding they lacked standing to assert their claim. Plaintiffs then sued their lawyer for malpractice, contending that they would have prevailed in the parental rights termination suit if they had been named temporary managing conservators originally. We held that limitations was tolled on the malpractice claim during the pendency of the termination litigation. *Id.* at 157. We explained that if limitations were not tolled, plaintiffs would have been required to file the malpractice suit while the termination suit was still pending, and to assert in one that their attorney's actions were proper and in the other that his actions were improper. *Id.* at 156–157.

Plaintiffs in the present case argue that if they had been required to file their malpractice claim while the Tax Court proceeding was pending, they, like the plaintiffs in *Hughes*, would have been forced to take inconsistent positions. They would have argued to the Tax Court that Touche Ross was correct in its advice, but in the malpractice action they would have argued that Touche

Ross was incorrect. Thus, plaintiffs argue, they are entitled to the same rule applied in *Hughes*.

But *Hughes* does not hold that limitations is tolled *whenever* a litigant might be forced to take inconsistent positions. Such an exception to limitations would be far too broad. We expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that results in litigation. In such circumstances, to require the client to file a malpractice claim against the lawyer representing him in another case would necessarily make it virtually impossible for the lawyer to continue his representation. The client's only alternative would be to obtain other counsel. That consideration, coupled with the necessity of taking inconsistent positions, persuaded us to adopt a tolling rule in *Hughes*. We restricted it to the circumstances presented.

No similar impediment prevented plaintiffs in the present case from suing Touche Ross while the Tax Court litigation was pending. Filing a malpractice suit against Touche Ross would not have affected its testimony in the tax case. While it is unreasonable to expect an attorney to continue to represent a client who is simultaneously suing the attorney for mishandling the very same matter, it is not unreasonable to expect an expert to testify consistently regardless of whether his client is suing him. The relationship between attorney and client is simply different from that between party and witness or party and expert. While prosecuting both the tax suit and a malpractice suit at the same time would have required plaintiffs to take inconsistent positions, they could have avoided this by requesting the court to abate the malpractice case pending resolution of the tax suit. A court in such circumstances should abate the malpractice case pending final resolution of the tax suit. Plaintiffs in this case simply would not have suffered the prejudice the *Hughes* plaintiffs would have suffered by either suing the lawyer who was still representing them and thereby losing his services or allowing limitations to run against their malpractice claim.

Accordingly, we hold that *Hughes* does not toll limitations in this case.

## IV

■ JUSTICE SPECTOR's dissent mischaracterizes our application of the discovery rule as holding that "an accounting malpractice cause of action accrues when a taxpayer knows or should know of a *mere risk* of injury". *Post* at 274. As in all discovery rule cases, a cause of action accrues when the plaintiff knows or reasonably should know that he has been legally injured by the alleged wrong, however slightly. The fact that the plaintiff's actual damages may not be fully known until much later does not affect the determination of the accrual date for alleged accounting malpractice any more than it does for legal malpractice.

JUSTICE SPECTOR's dissent would hold that a cause of action for faulty tax advice accrues when a "tax dispute is resolved"—whether by the taxpayer's acceptance of an IRS assessment, negotiation of a settlement, or exhaustion of judicial remedies. *Post* at 274. We are not aware of any precedent for allowing a plaintiff to choose the date of accrual of a cause of action, and the dissent cites none. While it may be necessary to abate a malpractice suit pending resolution of a dispute with the taxing authority, we view that procedure as preferable to holding that limitations on a plaintiff's claim begins to run when plaintiff decides it should.

JUSTICE SPECTOR's dissent would also expand *Hughes* to toll limitations whenever a party's claims would require the party to take inconsistent positions. *Hughes* is not so broad. It is expressly limited to claims against a lawyer arising out of litigation where the party must not only assert inconsistent positions but must also obtain new counsel. That factor is not present when the allegedly negligent party is an accountant. A lawyer, like an accountant, could reasonably be expected to testify on a client's behalf and in defense of his professional advice despite the client's assertions of malpractice, but a lawyer could not reasonably be expected to continue to represent the client under such circumstances.

JUSTICE ABBOTT's separate dissent states: "There is no need for an accountant to be subject to a malpractice claim if the Tax Court concludes that his client does not owe additional taxes and the accountant's advice was sound." *Post* at 276. The amicus curiae brief filed on behalf of the Texas Society of Certified Public Accountants takes a different view of accountants' "need" for prompt adjudication of malpractice claims. That brief explains:

> When alleged malpractice claims are not brought within a reasonable period after they are discovered or should have been discovered, accountants are severely prejudiced in mounting their defense: witnesses often cannot be located or have forgotten critical facts and documents frequently are misplaced or destroyed. Moreover, when accountants face the prospect of potential claims for prolonged and indeterminate periods of time, the policy of repose underlying the statute of limitations is undermined.

The amicus argues in favor of the rule we have adopted as being fair to both plaintiffs and defendants in accounting malpractice cases—providing plaintiffs an ample opportunity to file suit from the time they know or reasonably should know of the faulty advice, and assuring that defendants, in the words of the amicus, "will not be faced with the specter of litigating decade-old claims." JUSTICE ABBOTT's concern for accountants does not appear to be shared by the accountants themselves.

\* \* \* \* \* \*

For the reasons we have explained, the district court correctly granted Touche Ross summary judgment on all plaintiffs' claims. The court of appeals' remand of plaintiffs' fraud claim is reversed, its judgment is modified to affirm the district court's judgment in all respects, and as modified, the court of appeals' judgment is affirmed.

ABBOTT, J. filed a dissent.

HANKINSON, J., did not participate in the decision.

SPECTOR, Justice, joined by ABBOTT, Justice, and joined in Part I by ENOCH, Justice, dissenting.

Thirty years ago, this Court held that a taxpayer's malpractice cause of action

against an accountant accrues when the taxpayer knows or should know that he or she has been *actually* injured and the tort complained of is complete. *Atkins v. Crosland,* 417 S.W.2d 150 (Tex.1967). Today the Court holds, in effect, that an accounting malpractice cause of action accrues when a taxpayer knows or should know of a *mere risk* of injury, before any actual injury has occurred. Because the Court misapplies *Atkins,* and because this case should also be controlled by the tolling rule of *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991), I dissent.

## I.

Malpractice requires legal injury as an element of the cause of action. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex. 1995) (malpractice cause of action arises only when there has been a breach of duty that proximately causes damages). In *Atkins,* this Court held that the taxpayer's cause of action against his accountant for malpractice arose, not when the accounting error was committed, but when the Commissioner of Internal Revenue assessed a deficiency against the taxpayer. 417 S.W.2d at 153. This was so because the taxpayer took no further action to contest the deficiency. Consequently, actual injury resulted and the tort was complete. *Id.*[1]

In tax cases, where disputing the amount of tax liability is routine,[2] there is no legal injury until the tax dispute is resolved. *Atkins* held that the cause of action arises when a deficiency is assessed, not because that particular stage of a tax liability dispute has special significance, but because that is when

the deficiency is determined in that particular case. When the assessment is no longer in dispute, the existence of an injury can then be determined, an essential element of the malpractice cause of action. *See Atkins,* 417 S.W.2d at 153–54 (citing a similar rule in *Linkenhoger v. American Fidelity & Cas. Co.,* 152 Tex. 534, 260 S.W.2d 884 (1953)).

In this case, it was the judgment of the tax court that determined whether there would be liability, thus completing the tort. *See Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323 (Fla.1990) (holding that when the accountant did not acknowledge error, the limitations period commenced when the tax court entered its judgment). Here, the plaintiffs suffered no actual injury upon receiving the notice of deficiency.[3] Rather, the deficiency notice made the plaintiffs aware of a mere risk of harm: the possibility that Touche Ross *may* have committed malpractice that could result in damages. Actual injury, however, occurs only when the taxpayer, due to the accountant's malpractice, accepts the IRS's assessment, negotiates a settlement, or exhausts appeal in the courts.

By holding that the plaintiffs' cause of action accrued when they became aware of a risk of harm rather than when they became aware of an actual injury, the Court misapplies *Atkins* in a particularly ill-advised way. Essentially, the Court holds that a plaintiff can "discover" an injury before the injury occurs and before "the tort complained of [is] completed." *Atkins,* 417 S.W.2d at 153. This holding runs contrary not only to common sense but also to our established jurisprudence on the statute of limitations.[4] Un-

---

**1.** The majority's use of *Atkins* in its discovery rule discussion is particularly inappropriate as the *Atkins* opinion does not even mention the rule. 964 S.W.2d at 271.

**2.** Challenging deficiency notices from the IRS is such a routine part of doing business and paying taxes that the IRS itself allows the costs to be deducted. *See, e.g.,* Rev. Rul. 92–29, 1992–1 C.B. 20 (allowing a deduction for the costs of resolving asserted tax deficiencies of a sole proprietor's business); *see also* Earl C. Gottschalk, Jr., *Fighting Uncle Sam: Weigh the Costs and Probable Benefits of Your Claim Before Taking on the IRS,* WALL ST. J., Mar. 8, 1991, at R24.

**3.** The IRS's notice of deficiency in this case, which the Court holds triggered the accrual of the plaintiffs' cause of action, differs significantly from the final assessment in *Atkins.* Penalties may not be assessed until either ninety days after the notice, if the taxpayer does not sue in tax court, 26 C.F.R. § 301.6213–1(a)(2), or after final judgment in the tax court or court of appeals. 26 U.S.C. § 7481(a). If the IRS is prohibited from assessing penalties, it is difficult to see how an injury triggering a cause of action for malpractice could have occurred.

**4.** I take issue with those courts of appeals that have substituted a "risk of harm" requirement

der the Court's view, a taxpayer could sue for malpractice, and then prevail in the underlying tax dispute, proving that there was no actual injury in the first place. Further, by forcing taxpayers to sue their accountants before it is possible to determine whether a wrong has been committed, the Court's decision will have the practical effect of encouraging needless litigation and wasting valuable court resources on suits that will ultimately be abandoned. *See International Engine Parts, Inc. v. Feddersen & Co.,* 9 Cal.4th 606, 38 Cal.Rptr.2d 150, 159, 888 P.2d 1279, 1287 (1995); *United States Nat'l Bank v. Davies,* 274 Or. 663, 548 P.2d 966, 970 (1976).

## II.

The Court errs also by narrowing our holding in *Hughes.*[5] 821 S.W.2d 154. Under *Hughes,* limitations are tolled on a legal malpractice claim until resolution of the underlying litigation in which the attorney may have breached a duty. The reasons for this rule are twofold. First, as the Court acknowledges today, the plaintiff should not be forced to take inconsistent positions, arguing in the malpractice suit that the attorney acted negligently at the same time the client's self-interest requires supporting the attorney's actions in the underlying suit. *See Peat, Marwick,* 565 So.2d at 1326. Second, "[l]imitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first." *Hughes,* 821 S.W.2d at 157.

The applicability of *Hughes* to this case goes beyond the inconsistent positions problem. Although *Hughes* was an attorney malpractice action, accounting malpractice involving tax advice is similar to legal malpractice for limitations purposes, as the majority acknowledges. 964 S.W.2d at 272 (citing *Willis v. Maverick,* 760 S.W.2d 642 (Tex. 1988)). The majority fails to acknowledge,

however, that the concerns behind the decision in *Hughes* apply with equal force to the case at bar. The plaintiffs in this case had to hire another accounting firm during the tax court proceedings, just as the plaintiffs in *Hughes* would have been forced to obtain new counsel in the underlying lawsuit after filing a malpractice action against their original attorney.

Further, the Court suggests that the plaintiffs in this case could have filed and abated the malpractice action during the pendency of the tax court action. That suggestion could have applied equally to the plaintiffs in *Hughes,* but we rejected it as overly burdensome on the plaintiffs and inconsistent with the discovery rule's purposes. In addition, to do so would allow the malpractice cause of action to accrue before the merits of the underlying claim are determined. In essence, plaintiffs are forced to sue before their claim is ripe. *See City of El Paso v. Madero Dev.,* 803 S.W.2d 396 (Tex.App.—El Paso 1991, writ denied). Taxpayers who rely on an errant accountant's advice to pursue a dispute through the lengthy tax court appeals process might have no cause of action if the statute runs from the notice of deficiency, as the majority would have it. *See Peat, Marwick,* 565 So.2d 1323.

Because all of the justifications for the attorney-malpractice rule in *Hughes* apply equally to accounting malpractice, the Court is unjustified in limiting *Hughes* to the facts of that case. The Court's holding today not only refuses to extend *Hughes,* but it severely restricts that decision's application. Because of the similarities between legal malpractice and accounting malpractice, and their potential for overlap, I would hold that even if a tort cause of action has accrued, the statute of limitations is tolled during the pendency of the tax liability dispute. This holding would have prevented the plaintiffs

for an actual harm requirement. *See Ponder v. Brice & Mankoff,* 889 S.W.2d 637, 642–43 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *Hoover v. Gregory,* 835 S.W.2d 668, 673 (Tex. App.—Dallas 1992, writ denied); *Zidell v. Bird,* 692 S.W.2d 550 (Tex.App.—Austin 1985, no writ). This Court has consistently reiterated that the plaintiff must know or have reason to know of the wrongful act and *actual injury* to trigger

limitations under the discovery rule. See *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex.1996); *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994) ("the cause of action is deemed not to accrue until the injury becomes discoverable").

5. While JUSTICE ENOCH does not join in Part II, he agrees that the Court misreads *Hughes.*

from being forced into inconsistent positions in the two cases and allowed the plaintiffs to determine before suing if they had been wronged.

## III.

Statutes of limitations balance competing interests: giving potential plaintiffs a reasonable time to present their claims while fixing a point beyond which potential defendants can rest assured that they will not be sued for past actions. By holding that a cause of action for accounting malpractice accrues, at the latest, when the plaintiff receives a notice of tax deficiency, the Court has upset that balance. Because the Court forces accounting malpractice plaintiffs to sue before they have been actually injured and to take inconsistent positions in the underlying litigation, I dissent.

ABBOTT, Justice, dissenting.

Why would a client want to file a malpractice lawsuit against his accountant when the client may ultimately prevail in his dispute with the Internal Revenue Service, thus making a malpractice action unnecessary? Because the Court today requires such a result. According to the Court, taxpayers who may ultimately succeed in overturning a tax deficiency must nevertheless sue their accountants after receiving the deficiency to preclude the expiration of limitations.

I believe this fosters unnecessary litigation. There is no need for an accountant to be subject to a malpractice claim if the Tax Court concludes that his client does not owe additional taxes and the accountant's advice was sound. While the Court states that taxpayers can file a malpractice action and then abate the action until the tax suit is resolved, such a hurry-up-and-wait approach is contrary to our efforts to expedite the litigation process.

For these reasons, and for the reasons set forth by Justice Spector, I dissent.