**PECAN VALLEY NUT COMPANY, INC., et al, Appellants,**

v.

**E.I. DU PONT DE NEMOURS & COMPANY, et al, Appellees.**

No. 11–98–00154–CV.

Court of Appeals of Texas, Eastland.

March 9, 2000.

Rehearing Overruled April 27, 2000.

245

Gerald L. Bracht, Solace Kirkland Southwick, Charles B. Hampton, Mayor Day Caldwell & Keeton,, Houston, Jim Parker, Comanche, Jesse R. Castillo, Castillo & Nieto, San Antonio, for appellees.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCLOUD, S.J.*

## OPINION

AUSTIN McCLOUD, Senior Justice (Retired).

This case involves the discovery rule. Plaintiffs,[1] the owners of commercial pecan

---

\* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Plaintiffs are Bernard S. Appel; Patty S. Beem; Manuel E. Bejar; Bradberry/Dickerson Investments d/b/a B/D Interest; Citadel Family Group, Ltd.; Donald R. Cooper; Tom M. Dees; Lola M. Easley; David N. Fitzgerald; Henry Gilchrist; Mark Henderson; Maren H. Hirsch; Douglas M. Johnson; Edward J. Koehl; Helen Lauderdale; Richard R. Lee, Jr.; David T. McDonald, Trustee for Pepere–Memere Trust; Joanne Buxton McGee; Bobby L. Minich; Pecan Valley Nut Company,

Inc.; George Pepper; The First National Bank of Boston, Trustee for Charles Phillips Estate Elizabeth Phillips Trust; Donald L. Roubadeux; Kenneth P. Shivers and Nancy H. Shivers, Trustees for the Shivers Revocable Trust; Dave Shows; Charles U. Slick; Thomas B. Slick; William Slick; Norman W. Smith; Robert J. Survil; Timmermann Properties, Inc.; L.E. Tucker and Edith Tucker, Trustees for Tucker Living Trust; Marion V. Turner, Trustee for the John W. and Marion Virginia Turner First Amended and Restated Revocable Living Trust; Alden Wagner; Donald Williams; J. Wilcox Wofford; and William I. Wyatt, Jr.

orchards, sued defendants [2] for damages to plaintiffs' pecan trees caused by the use of Benlate, a fungicide manufactured by E.I. du Pont de Nemours & Company and distributed to plaintiffs by the other defendants. The trial court granted defendants' motion for summary judgment based upon limitations. Plaintiffs appeal. We affirm in part and reverse and remand in part.

Plaintiffs sought recovery under theories of strict liability; negligence; violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987 & Pamph. Supp.2000); and breach of express and implied warranties. The trial court granted summary judgment as to all claims asserted by plaintiffs except breach of warranty claims regarding Benlate purchased within four years of filing suit. Those breach of warranty claims were severed from this case.

Plaintiffs filed their original petition on August 28, 1996. Benlate was applied to plaintiffs' pecan trees in 1988, 1989, 1990, and in September of 1992. Defendants relied upon the two year limitations period applicable to suits for property damage, the two year DTPA limitations provision, and the four year limitations period for breach of warranty.

■■■ A cause of action generally accrues when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury. The discovery rule represents an exception to this general rule of accrual. The discovery rule tolls the running of the period of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of the injury. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). Defendants must have conclusively proved when the cause of action accrued and negated the discovery rule, if it applied, by proving as a matter of law that there was no genuine issue of

material fact about when plaintiffs discovered or, in the exercise of reasonable diligence, should have discovered the nature of their injury. *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 748 (Tex.1999); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n. 2 (Tex.1988).

### *Strict Liability and Negligence Causes of Action*

■■■ The court in *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 886 (Tex.1998), held that two unifying principles generally apply in judicially-created discovery rule cases. The nature of the injury must be inherently undiscoverable, and the injury must be objectively verifiable. See *Murphy v. Campbell*, 964 S.W.2d 265 (Tex.1997); *S.V. v. R.V.*, 933 S.W.2d 1 (Tex.1996); *Computer Associates International, Inc. v. Altai, Inc.*, 918 S.W.2d 453 (Tex.1994). The application of the discovery rule is determined "categorically." We determine whether the discovery rule applies to particular types of cases rather than to a particular case. *HECI Exploration Company v. Neel*, supra. The court in *Computer Associates International, Inc.* noted that the application of the discovery rule proves to be a "very limited" exception to statutes of limitation. "Inherently undiscoverable" was explained in *S.V. v. R.V.*, supra at 7, as follows:

To be "inherently undiscoverable," an injury need not be absolutely impossible to discover, else suit would never be filed and the question whether to apply the discovery rule would never arise. Nor does "inherently undiscoverable" mean merely that a particular plaintiff did not discover his injury within the prescribed period of limitations; discovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it oc-

---

**2.** Defendants are E.I. du Pont de Nemours & Company, Helena Chemical Company, and

Terra International, Inc.

curred and plaintiff's diligence as well. An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. *Computer Associates*, 918 S.W.2d at 456.

■ The summary judgment proof showed that, following the application of Benlate, the pecan trees showed symptoms of sun scold, terminal die back, early defoliation, and curling and chlorosis of the leaves. The symptoms were observable and obvious to someone looking at the trees. Du Pont issued recalls of Benlate in 1989 and 1991. News articles concerning the potential problems caused by Benlate appeared in several Texas newspapers, the *Wall Street Journal*, *U.S.A. Today*, and *Newsweek* and *Time* magazines. The record reflects that, in connection with the 1991 recall of Benlate, du Pont faxed an announcement of the recall to all Benlate dealers and distributors and requested that they immediately contact all users of Benlate. Mailgrams were sent to extension agents in over 5,000 counties in the United States and to over 60,000 growers and dealers. First class letters were sent to approximately 55,000 other dealers and industry associations. The record shows that horticultural experts could determine if plaintiffs' trees were damaged by Benlate.

We hold that plaintiffs' strict liability and negligence claims were not "inherently undiscoverable." This is so even though the symptoms were consistent with symptoms caused by natural causes such as adverse weather. Because plaintiffs' strict liability and negligence claims are not inherently undiscoverable, it is not necessary for us to reach the question of whether the injury to the trees was objectively verifiable.

Because the judicially-created discovery rule announced in *Gaddis v. Smith*, 417 S.W.2d 577 (Tex.1967), is not applicable to plaintiffs' strict liability and negligence claims, the court properly held that those claims were barred by the two year limita-tions period. See TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon Supp.2000). Those claims accrued when the Benlate was applied.

## DTPA Claims

■ The two judicially-created requirements of inherent undiscoverability and objective verifiability do not apply to plaintiffs' DTPA claims. The court in *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990), held that the legislature wrote the "discovery rule" into DTPA causes of action. The *Burns* court observed that TEX. BUS. & COM. CODE ANN. § 17.565 (Vernon 1987) provides:

All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading or deceptive act or practice.

Clearly, the discovery rule applies by statute to DTPA cases. See *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, supra; *Murphy v. Campbell*, supra at 271.

Because the discovery rule applies to plaintiffs' claims under the DTPA, defendants had the burden to conclusively establish that plaintiffs' causes of action accrued more than two years before suit was filed. The court in *KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, supra at 749, recently stated that accrual occurs when the plaintiff knew or should have known of the "wrongfully caused injury." The court further explained its holding:

Significantly, HCH sued First Interstate over this precise injury in early 1993, less than two years later. Indisputably, HCH *was aware by then of its injury and that its injury was caused by the wrongful conduct of another.* (Emphasis added)

In *Murphy v. Campbell,* supra, after determining that the discovery rule applied, the court said that a claim accrues when the claimant knows or in the exercise of ordinary diligence should know of the "wrongful act and resulting injury." In *Childs v. Haussecker,* 974 S.W.2d 31, 41 (Tex.1998), while discussing the nature of the injury and the accrual of a cause of action, the court said:

> We recently explained that discovering the "nature of the injury" requires knowledge of the wrongful act and the resulting injury.
>
> \* \* \*
>
> Thus, when the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another.

Defendants point to the testimony of Paul Lollar, an employee of Pecan Valley Nut Company and the day-to-day manager for the pecan orchards owned by plaintiffs. Lollar acknowledged that, between 1989 and 1991, he observed that the "trees had a problem." Lollar agreed that "there was injury to them, terminal die back, yellowing of leaves, [and] sun scold." Defendants argue that the summary judgment evidence conclusively established that plaintiffs were aware that they had been "injured" more than two years before suit was filed.

Lollar testified by deposition that he was not aware that Benlate was subject to recalls in 1989 and 1991. By affidavit, Lollar stated that, prior to July 1996, he had no reason to suspect that the symptoms he observed in 1989 and 1991 had anything to do with using Benlate. He stated that, based on his experience, reading, and consultation with experts such as the "A & M" extension program, he believed that the symptoms he observed in 1988, 1990, and 1991 resulted from natural causes. Lollar stated that no Benlate dealer or distributor contacted him regarding the recalls in 1989 and 1991. He first heard of the recalls in 1996. Lollar said in his affidavit that neither he nor any of the pecan growers with whom he was acquainted were aware of any adverse publicity about Benlate use before 1996. He added that, during that time, Pecan Valley Nut Company relied on the extension service information which indicated that Benlate was a safe, effective product.

Carl E. Whitcomb, who had a doctorate degree from Iowa State University in horticulture, plant ecology, and agronomy, stated in his affidavit that the symptoms noted by Pecan Valley Nut Company, such as terminal die back, early defoliation, curling, and leaf chlorosis, commonly resulted from natural factors affecting pecan trees and, therefore, were not in any way suggestive of injury resulting from the use of Benlate fungicide. John Brown, who had a doctorate degree in horticulture from North Carolina State University, agreed that the symptoms observed by Lollar "consistently result from common farm conditions unrelated to Benlate use."

In conducting our review of the summary judgment proof, we take as true all evidence favorable to plaintiffs, and we make all reasonable inferences in plaintiffs' favor. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). We hold that defendants failed to conclusively establish that plaintiffs knew or should have known of the "wrongfully caused injury" more than two years before plaintiffs filed their DTPA causes of action. The trial court erred in ruling that plaintiffs' DTPA claims were barred by limitations.

### Breach of Warranty Claims

■ Plaintiffs alleged that defendants breached express and implied warranties. The trial court severed and filed in a new cause number the breach of warranty claims of plaintiffs "regarding Benlate purchased and used within four years of filing

suit." TEX. BUS. & COM. CODE ANN. § 2.725 (Vernon 1994) provides:

> (a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In applying the statute, the court in *Safeway Stores, Incorporated v. Certainteed Corporation,* 710 S.W.2d 544, 546 (Tex.1986), held:

> The language of the statute clearly states that a cause of action in breach of warranty arising from a contractual relationship accrues at the time of delivery, not at the time of discovery. This occurs "regardless of the aggrieved party's lack of knowledge of the breach" unless the exception applies.

The court added:

> Adoption of a uniform date of accrual and rejection of the discovery rule in warranty cases is a permissible means adopted by the state legislatures to protect commercial transactions. This end would not have been accomplished had the legislatures merely adopted a four-year statute of limitations without specifying when the statute would begin to run.

The rule announced in *Safeway Stores* was recently applied in *American Tobacco Company, Inc. v. Grinnell,* 951 S.W.2d 420, 435 (Tex.1997), wherein the court said:

> The four-year statute of limitations on implied warranties began to run at the time of delivery, not when Grinnell discovered he had cancer. Accordingly, the implied warranty claims predicated upon the addictive nature of cigarettes and that arose within four years before Grinnell filed suit are not barred by limitations and may be maintained.

Plaintiffs cite *Lochinvar Corporation v. Meyers,* 930 S.W.2d 182 (Tex.App.—Dallas 1996, no pet'n), to support their argument that the discovery rule provisions of Section 17.565 of the DTPA governs our decision rather than Section 2.725. We disagree. First, we note that in *Lochinvar* the court noted that the breach of implied warranty claims were asserted "under the DTPA." That is not true in this case. More importantly, we disagree with the analysis of the *Lochinvar* court in its attempt to distinguish *Safeway Stores, Incorporated v. Certainteed Corporation,* supra.

We hold that the trial court correctly held that plaintiffs' breach of warranty claims, based upon Benlate delivered to plaintiffs more than four years before plaintiffs' suit was filed, were barred by limitations.

■ The parties agree that Tri–State Chemicals, Inc. did not file a motion for summary judgment and that no defendant moved for summary judgment against Faith E. Survil. The final judgment, however, purports to grant Tri–State Chemicals a summary judgment against plaintiffs and against Faith E. Survil. The judgment also purports to grant defendants a summary judgment against Faith E. Survil.

That part of the summary judgment in favor of Tri–State Chemicals, Inc. and against Faith E. Survil is reversed, and those causes are remanded. *Bandera Electric Cooperative, Inc. v. Gilchrist,* 946 S.W.2d 336, 337 (Tex.1997).

### This Court's Ruling

We affirm the trial court's summary judgment as to plaintiffs' strict liability,

negligence, and breach of warranty claims. We reverse and remand the summary judgment as to plaintiffs' DTPA claims. We reverse and remand the summary judgment in favor of Tri–State Chemicals, Inc. and the summary judgment against Faith E. Survil.