

# NUMBER 13-13-00195-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN SCHELLENBERG AND
LISA SCHELLENBERG,                                              Appellants,

v.

FIRST STATE BANK
CENTRAL TEXAS,                                                   Appellee.

### On appeal from the 53rd District Court
### of Travis County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

This is a negligent misrepresentation and fraudulent inducement case brought

incident to a bankruptcy proceeding.  Appellants John Schellenberg and Lisa

Schellenberg, plaintiffs in the trial court, challenge the traditional summary judgment

granted in favor of appellee First State Bank Central Texas (FSB). By four issues, the Schellenbergs argue that the trial court erred in granting summary judgment to FSB because (1) their claims sound in tort and not contract; (2) the evidence was insufficient to show that their causes of action had accrued at the time of the signed release; (3) the evidence was insufficient to show that the representations made by FSB were true; and (4) the evidence was insufficient to show that their reliance on FSB's representations was unreasonable. We affirm.

## I. Background[1]

It is undisputed that in early 2006, the Schellenbergs contracted with a mortgage broker, Roger Rheinheimer, to help them secure a construction loan. Rheinheimer arranged a one-year interim construction loan for the Schellenbergs through FSB. The interim loan imposed a one-year construction deadline and was conditioned on the Schellenbergs securing permanent financing to refinance the interim loan at the completion of construction.

The interim loan agreement was executed by the parties on August 10, 2006. In their petition, the Schellenbergs allege that both Rheinheimer and an FSB loan officer told them that permanent financing was "sourced and locked" at the time of the interim loan contract. In a letter, which was attached as evidence to FSB's motion for summary judgment, Mortgage Acceptance Corporation (MAC) committed to provide permanent financing; the commitment letter also conditioned financing on the completion of

---

[1] This case is before the Court on transfer from the Third Court of Appeals in Austin pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

2

construction within one year of the interim loan agreement, or by August 10, 2007. The parties dispute whether the Schellenbergs ever saw this commitment letter. Finally, as part of the loan agreement, the Schellenbergs paid a $7,720 commitment fee to MAC; the Schellenbergs allege that Rheinheimer told them that this fee was necessary to secure the permanent financing.

It is undisputed that during the summer of 2007, the parties began to question whether the Schellenbergs were going to meet their August 10 construction deadline. The Schellenbergs alleged that, "knowing that the interim construction was coming due in approximately two months," they contacted Rheinheimer in both June and July 2007 to check on the status of the permanent financing. At these times, the Schellenbergs alleged, Rheinheimer informed them that it was "'too early'" for him to advise them on the terms of the permanent financing. The Schellenbergs alleged that in August 2007, because "the interim construction loan was due but construction was not quite complete on the Schellenberg residence," they "visited with Rheinheimer and FSB to discuss extending the note with FSB and to discuss the terms of the permanent loan that would be used to refinance the interim construction loan." When they asked about the permanent financing, "Rheinheimer told [them], 'They aren't making those anymore,'" and that they "would have to find permanent financing elsewhere because he could not make those kinds of loans anymore." The Schellenbergs alleged, and FSB does not dispute, that the expiration of the original interim loan "coincided with one of the worst mortgage markets in recent history."

Rheinheimer searched for new permanent financing throughout the fall of 2007 but near the end of September, informed the Schellenbergs that he was unable to find it and

3

suggested that the Schellenbergs list their property for sale. FSB agreed to extend its interim loan to the Schellenbergs later in the fall. On November 9, 2007, the Schellenbergs and FSB signed an extension of the interim construction agreement, which extended the maturity date of the interim loan to February 6, 2008 and included a release of any and all claims against FSB, known and unknown, that had accrued up to that date. When they signed the extension agreement, the Schellenbergs reserved their right to assert claims against Rheinheimer and MAC. When the Schellenbergs failed to meet their obligations under the extended terms, FSB foreclosed on the loan. In March 2009, the Schellenbergs filed for bankruptcy.

The Schellenbergs sued FSB, alleging claims for promissory estoppel, negligent misrepresentation, and fraudulent inducement.[2] Specifically, the Schellenbergs alleged that FSB promised and represented to them at the time of the August 10, 2006 loan that: a permanent loan commitment had been "sourced and locked"; FSB was "satisfied with the Schellenbergs' permanent loan" commitment; and FSB "does not make interim construction loans unless permanent financing is in place." The Schellenbergs also alleged that FSB showed them a "HUD-1 settlement statement showing fees paid for its promised permanent financing loan." The Schellenbergs claimed that these representations were either negligent misstatements of fact or knowingly false and that they reasonably relied on these statements to their detriment. The Schellenbergs claimed that they suffered damages in the form of "loss of the actual land, loss of actual

---

[2] The Schellenbergs also alleged claims of common-law fraud and fraud by non-disclosure against MAC, Rheinheimer, and others not parties to this appeal; these claims were non-suited after the trial court granted summary judgment to FSB.

4

value of the land, cost of the improvements to the land, cost of third party providers that provided services for the development of the land, loan fees, damage to credit reputation, and loss of future earnings derived from the stables that were constructed on the property as part of the Schellenbergs' livelihood."

FSB filed a traditional motion for summary judgment, arguing that the Schellenbergs' claims were barred as a matter of law because: (1) they signed an agreement releasing FSB from all claims; (2) their claims sounded in contract and not tort; (3) FSB could conclusively disprove the promise, reasonable reliance, and falsity elements of fraud; and (4) the statute of frauds barred the promissory estoppel claim. FSB attached as evidence: excerpts from the Schellenbergs' depositions, which included as exhibits the various documents involved in effectuating the interim construction loan; the affidavit of FSB's loan officer; a series of emails between Rheinheimer and the Schellenbergs; and the HUD statement. The Schellenbergs responded, in relevant part, that because they were unaware of the facts giving rise to their claims at the time of the November 2007 extended loan agreement, the discovery rule barred application of the release. The Schellenbergs attached Lisa's affidavit to their response as evidence.

The trial court granted FSB's motion for summary judgment on all claims by the Schellenbergs against FSB but did not specify the grounds.[3] The Schellenbergs then filed this appeal.

---

[3] The Schellenbergs' brief addresses the trial court's ruling only as to their negligent misrepresentation and fraudulent inducement claims. Because they do not challenge the trial court's ruling on their promissory estoppel claim, they have waived our review as to that claim. *See* TEX. R. APP. P. 38.1(f), (h).

5

## II.  Standard of Review

We review a trial court's ruling on a summary judgment motion de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Alejandro v. Bell*, 84 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2002, no pet.).  In reviewing the granting of a traditional motion for summary judgment, we follow these well-established rules:  (1) the movant bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, we will take as true the evidence favorable to the nonmovant; and (3) we will indulge every reasonable inference and resolve any doubts in favor of the nonmovant.  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *see* TEX. R. CIV. P. 166a(c).  A defendant can obtain a traditional summary judgment if it can, as a matter of law, disprove one or more elements essential to the plaintiff's claims, *see Alba v. Nueces County Sheriff's Dep't*, 89 S.W.3d 132, 133 (Tex. App.—Corpus Christi 2002, no pet.), or establish each element of its affirmative defense.  *See ABC, Inc. v. Shanks*, 1 S.W.3d 230, 234 (Tex. App.—Corpus Christi 1999, pet. denied).  When the district court's order granting summary judgment does not specify the ground relied on for the ruling, as is the case here, we will affirm summary judgment if any of the theories advanced are meritorious.  *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## III.  Discussion

In their second issue, the Schellenbergs argue that the trial court erred if it granted summary judgment on the ground that the release in the November 2007 loan extension

6

agreement precluded the Schellenbergs' claims.[4]   The Schellenbergs argue that they did not know of FSB's wrongful act—what they characterize as FSB's "misrepresent[ation]" on August 10, 2006 "that permanent financing was in place"—at the time they signed the modified loan agreement that contained the release.   In short, the Schellenbergs argue that the discovery rule bars application of the release.   We disagree.

A bolded paragraph on page 5 of the loan extension agreement provided that the Schellenbergs

> do hereby fully release, indemnify, acquit and forever discharge [FSB and its employees and agents] . . . and from any and all rights, liabilities, claims, demands, suits, controversies, debts, damages, attorneys' fees, penalty or Interest, court costs, and/or causes of action, known or unknown, including, but not limited to, the payment of any money, for the performance or furnishing of any consideration, for damages relating to, or resulting from and arising out of, all matters, facts, circumstances relating to the business relationship between [the Schellenbergs and FSB], accrued to the date hereof in favor of any of the [Schellenbergs] . . . .

(Emphasis removed.)   In signing the agreement, the Schellenbergs acknowledged that they had "carefully reviewed" the agreement, had the opportunity to review the agreement with their attorney, and understood the meaning and effect of the agreement.   In her deposition, Lisa testified that on the advice of an attorney, they added to the agreement a notation reserving their right to assert claims against Rheinheimer and MAC.

The Schellenbergs do not dispute that the release would have covered their claims had they accrued at the time of the modified loan agreement.   They do not dispute that their claims were related to and arose out of their business relationship with FSB; nor do they contend that their claims are the sort not covered by the language of the release.

---

[4] Because this issue is dispositive of the appeal, we review it first.   *See* TEX. R. APP. P. 47.1.

Instead, they contend that at the time of the signing of the release they did not know that FSB's August 2006 representation that permanent financing was secured was false, and therefore, their claims had not yet accrued and the release did not bar their claims.

"Generally, a cause of action accrues when a wrongful act causes a legal injury." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). A cause of action may accrue even if the fact of the injury is not discovered until later and even if all resulting damages have not yet occurred. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). Determining the accrual date of a cause of action is a question of law. *Etan Indus., Inc.*, 359 S.W.3d at 623 (citations omitted). Here, the Schellenberg's negligent misrepresentation and fraudulent inducement claims accrued at the time of the alleged misrepresentation, or on August 10, 2006, when FSB told them that permanent financing had been secured. *See Seureau v. Exxon Mobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("A cause of action for fraud accrues on the date that the defendant makes the allegedly false representations") (citing *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988)); *see also Mauskar v. Hardgrove*, No. 14-02-00756-CV, 2003 WL 21403464, at *3 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.) (mem. op.) (holding that plaintiff's negligent misrepresentation claim accrued at the time he signed his insurance contract, which was when his agent made the allegedly negligent representation). The question for the Court, then, is whether the discovery rule tolled the accrual of the Schellenbergs' claims

8

such that the release does not apply. Assuming without deciding that the discovery rule applies here,[5] it does not save the Schellenbergs' claims.

"Where the discovery rule applies, the cause of action accrues when the plaintiff knows, or through the exercise of reasonable care and diligence should have discovered, the nature of his injury and the likelihood that it was caused by the wrongful acts of another." *Seureau*, 274 S.W.3d at 228 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998)). The plaintiff need not know the identity of the wrongdoer, the extent of its injuries, or the exact cause and possible cures. *See Childs*, 974 S.W.2d at 40; *see also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004). In short, the discovery rule tolls accrual only until the plaintiff learns of a wrongful injury. *PPG Indus.*, 146 S.W.3d at 93 (citing *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)).

Here, it was the lack of permanent financing that doomed the Schellenbergs' construction project and caused their alleged injuries. The commitment letter from MAC required that construction be completed within one year of the interim loan, and when the Schellenbergs failed to complete construction in that time, that financing was no longer available. It is undisputed that the Schellenbergs knew this fact as early as August 2007, several months before they signed the loan extension agreement with FSB in November. In her deposition, Lisa testified that Rheinheimer informed them in August 2007, when

---

[5] FSB argued in its motion for summary judgment, and now on appeal, that the discovery rule does not apply because the release included both known and unknown claims and that it is therefore irrelevant whether the Schellenbergs knew of their claims against FSB at the time they signed the modified loan agreement. Because we dispose of this issue on the basis of the discovery rule, we express no opinion on this argument.

the interim loan from FSB was due and it was apparent that the Schellenbergs were not going to meet their construction deadline, that they no longer had permanent financing and he was likely not going to be able to find them permanent financing because of the unfortunate coinciding of the housing-bubble burst. At the very latest, the Schellenbergs knew that they no longer had permanent financing on September 22, 2007, when Rheinheimer gave them final notice that his search for new permanent financing had been fruitless and advised them to put their property on the market.

Because the Schellenbergs knew that they no longer had permanent financing for their project months before they signed the release, they knew that FSB's alleged representation in August 2006—that financing had been secured—had been false. Even if the Schellenbergs were not aware of the exact nature of their injuries or the extent of their damages, they knew at that point that the promise FSB allegedly made had been broken. The fact they knew something had gone awry is further evidenced by the extended loan agreement, in which the Schellenbergs explicitly reserved their right to assert claims against MAC and Rheinheimer. At the time they signed the loan agreement containing the release, the Schellenbergs were in possession of facts from which they should have deduced that they may have suffered a wrongful injury.

Taking as true the evidence favorable to the Schellenbergs and indulging every reasonable inference and resolving any doubts in their favor, we conclude that there are no genuine issues of material fact as to the applicability of the release in the November 2007 extended loan agreement and that FSB was entitled to judgment as a matter of law that the release barred the Schellenbergs' claims. *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *see also* TEX. R. CIV. P. 166a(c). Those claims

accrued in August 2006, and the undisputed evidence shows that the Schellenbergs should have discovered their injury by August or September 2007. *See Childs*, 974 S.W.2d at 40; *see also PPG Indus., Inc.*, 146 S.W.3d at 93. The discovery rule therefore does not save the Schellenbergs' claims from the release, and the trial court did not err in granting FSB summary judgment on this basis. The Schellenbergs' second issue is overruled. And because we may affirm the trial court's summary judgment on any meritorious ground, we need not reach the remainder of the Schellenbergs' issues. *See FM Props. Operating Co.*, 22 S.W.3d at 872.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 20th
day of November, 2014.

11