**SUNWEST BANK OF EL PASO, an affiliate of Sunwest Financial Services, Inc., and its predecessor, American Bank of Commerce, Appellant,**

v.

**BASIL SMITH ENGINEERING COMPANY, INC., and Basil Smith, Individually, Appellees.**

No. 08–95–00297–CV.

Court of Appeals of Texas, El Paso.

Nov. 27, 1996.

Rehearing Overruled Jan. 29, 1997.

E. Link Beck, E. Link Beck & Associates, El Paso, for appellant.

Marvin K. Foust, Marvin Foust, P.C., Mark Berry, El Paso, for appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is an appeal by the defendant bank from adverse jury findings on theories of conversion and negligence. We reverse and render, based on the bank's statute of limitations defense.

## FACTS

The appellee, Basil Smith, is an engineer in El Paso, Texas. In the late 1960s, Smith began doing business with North American Land Development ("NALD"). NALD was developing raw land in Timberon, New Mexico into a residential community. NALD sometimes paid for Smith's engineering services by assigning installment contracts for the purchase of Timberon lots to him. Smith, in turn, would assign the contracts to others for cash. Smith's employee, Pete Dix, handled sales and assignments of the contracts. During 1982 and 1983, the appellant, Sunwest Bank, formerly known as American Bank of Commerce ("ABC"), purchased some of Smith's contracts as investments for various trust accounts. Dix and Scott Flower, ABC's senior vice-president in charge of the trust department, concocted a scheme to skim money from Smith. In most instances, Dix would take a contract to Smith for signature. The contract would have an exhibit attached which outlined basic information such as the principal amount remaining on the contract, the interest rate, the monthly payment, and the sale price from Smith to ABC. Smith would execute the contract, with its exhibit attached, as assignor to ABC. When Dix took a contract to ABC to complete the assignment, Flower would issue two checks. One check would be to Smith for several thousand dollars less than the stated sale price. The second check would be to Dix as "agent," or to a corporation owned by Dix. The two checks always added up to the sale price stated on that particular contract's exhibit.

Apparently knowing that Smith trusted him and would not check or notice the discrepancy, Dix would deposit Smith's check and report the deposited amount to Smith. Smith, who controlled the business's checkbook at the time, would himself enter the "skimmed" amount in the company books. At trial, Smith admitted that he had seen the contracts with their exhibits prior to the assignment and that he could have caught the discrepancy easily had he ever compared the sale price on the exhibit with the deposit amount he received. He never did so because he trusted Dix, and he had "a lot of things I had to take care of." In a few instances of even more brazen conduct, Dix either forged Smith's name as assignor, or signed as assignor himself, and kept all of

the proceeds. Despite having kept the records for billings to and payments from NALD himself, Smith never noticed that these contracts, assigned to him in payment for his engineering work at NALD, had been assigned to someone else with no payment whatsoever to Smith.

Sometime late in 1985 or early 1986, Smith discovered that Dix had committed various acts of conversion and other misconduct not involving the land contracts at issue here. Dix quit before Smith could fire him. Investigating Dix's activities, Smith found, among other things, forged checks on Smith's business accounts, an unauthorized checking account Dix used for personal expenses, and unauthorized payments to Dix out of company funds. Smith's investigation, which he performed without the aid of an accountant or other professional auditor, failed to uncover the skimmed land contract deals.

In 1986, ABC began negotiating with Sunwest for the sale of the bank. As part of the process, outside auditors reviewed ABC's trust department records. The auditors and ABC Bank personnel noticed documentation discrepancies in some of the land contracts Flower had purchased from Smith through Dix. On September 16 and 17, 1987, ABC sent ten letters to Smith, one for each affected trust account, requesting missing documents and information. Smith asked for ABC's documents and disbursement records to help him respond to the request. When Smith received the disbursement records from ABC, he realized that Flower had issued two checks on each transaction, and that one of the checks on each transaction was made out to Dix or a related entity. After obtaining NALD's records of all of the NALD–to–Smith contract assignments, Smith further realized that some of the contracts were entirely missing and unaccounted

for. Smith concluded that "Flower was a thief." He filed this lawsuit against Sunwest as ABC's successor on April 4, 1989.

After a jury trial in April of 1995, Smith obtained findings of conversion and negligence against ABC/Sunwest. Smith submitted issues seeking a finding that he had a fiduciary relationship with ABC/Sunwest, and that ABC/Sunwest committed constructive fraud against Smith, but the jury found against Smith on those issues.

## DISCUSSION

ABC/Sunwest appeals the judgment alleging forty-two points of error. The points are grouped into eleven substantive areas of argument. As we find that the points concerning the statute of limitations control, we do not reach the others.

### Application of the Discovery Rule

■ In its first two points of error, ABC/Sunwest argues that the trial court erred in failing to find that Smith's negligence and conversion causes of action were barred by limitations as a matter of law. The trial court applied the discovery rule to the causes of action and entered judgment for Smith based on the jury's finding that Smith should not, in the exercise of reasonable diligence, have discovered his causes of action against ABC/Sunwest until December 14, 1987, the day Smith received the disbursement records from the bank.[1] Smith argues that until he saw that two checks had been issued on each of the contract transactions, he did not and could not have known that Flower and Dix were skimming funds from each deal.

■ The parties do not contest that, upon accrual, Section 16.003(a) of the Texas Civil Practice and Remedies Code establishes

---

1. ABC/Sunwest did not object to the trial court's submission of the discovery rule issue because it was applicable to Smith's constructive fraud theory. The jury, however, did not find constructive fraud. ABC/Sunwest filed a motion for judgment notwithstanding the verdict requesting, among other things, that the trial court disregard the jury's response to the discovery rule question as immaterial to the causes of action on which the jury found liability. In that motion, ABC/Sunwest advanced the same arguments it makes on

appeal. We find the JNOV sufficient to preserve error on the issue of the trial court's failure to disregard the immaterial finding. Whether the discovery rule applies to a cause of action is a matter of law for the court's determination. *See Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex.1990)(application of the statute of limitations is a matter of law for the court); *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191 (Tex.1966)(whether a jury response to a question is immaterial is a matter of law for the court).

a two-year statute of limitations for injury to the property of another or conversion of the property of another. Tex.Civ.Prac. & Rem. Code Ann. § 16.003(a)(Vernon 1986 and Supp.1997). A cause of action for negligence normally accrues when the duty of ordinary care is breached by some act or omission, even though the injury is not immediately apparent and the injured party is not aware of a cause of action. *Martinez v. Humble Sand & Gravel, Inc.,* 860 S.W.2d 467, 470 (Tex.App.—El Paso 1993), *rev'd on other grounds,* 875 S.W.2d 311 (Tex.1994). Similarly, unless possession is initially lawful, a cause of action for conversion accrues on the date of the conversion. *See Hofland v. Elgin–Butler Brick Co.,* 834 S.W.2d 409, 414–15 (Tex.App.—Corpus Christi 1992, no writ). In this case, it is undisputed that by the end of 1983, Smith was no longer assigning contracts to ABC/Sunwest. His negligence and conversion causes of action based on the contract transactions therefore must have accrued, at the very latest, sometime in 1983. Smith failed to file suit on his claims until 1989, at least five years after the last of the land contract transactions. Unless the discovery rule applies to toll the statute of limitations, Smith's claims are barred.

■ The Texas Supreme Court has recently stated that application of the discovery rule is limited to cases where (1) the injury is inherently undiscoverable; and (2) evidence of the injury is objectively verifiable. *Computer Associates Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996). Since the evidence of injury in this case is well documented and objectively verifiable, the only issue is whether Smith's injury was inherently undiscoverable at the time it occurred. The purpose of statutes of limitations is to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses. *Id.* at 455. The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994). In *Altai, Inc.,* the Supreme Court noted that the requirement of inherent undiscoverableness recognizes that the dis-

covery rule exception should be permitted only in circumstances where "it is difficult for the injured party to learn of the negligent act or omission." 918 S.W.2d at 456, *citing Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex. 1988). The court went on to cite examples of inherently undiscoverable injuries: *Kelley v. Rinkle,* 532 S.W.2d 947, 949 (Tex.1976)("A person will not ordinarily have any reason to suspect that he has been defamed by the publication of a false credit report to a credit agency until he makes application for credit...."); *Hays v. Hall,* 488 S.W.2d 412, 414 (Tex.1972)("One who undergoes a vasectomy operation, and then after tests is told that he is sterile, cannot know that he is still fertile, if that be the case, until either his wife becomes pregnant or he is shown to be fertile by further testing."); *Gaddis v. Smith,* 417 S.W.2d 577, 580 (Tex.1967)("It is a virtual certainty that the patient has no knowledge on the day following the surgery—nor for a long time thereafter—that a foreign object was left in the incision.").

■ In this case, we do not have a medical instrument left undetected in an incision, unnoticeable until it damages the patient's health. We do not have defamatory material lying dormant and essentially harmless on a credit report until the injured party seeks to obtain financing. We have, instead, open and blatant acts of theft. On the facts of this case, we are hard pressed to find that Smith's injury, the skimmed money, was so difficult to discern that it was "inherently undiscoverable." We are, of course, appalled at Dix's brazen acts of theft which were accomplished with the help of Flower and perpetrated under the nose of Dix's trusting employer. But it is Dix's very audacity that makes the injury in this case manifestly discoverable. Dix showed the contracts to Smith. He openly reported to Smith deposits in amounts thousands of dollars less than the stated contract price. Smith, with a misdirected trust in Dix he no doubt now regrets, entered the deposits without question. Smith admitted at trial that had he compared the contracts to the payments as he entered them in the checkbook, he would have discovered the thefts in "about a minute." There is nothing inherently undiscov-

erable about this injury. Accordingly, we find that the discovery rule is inapplicable to the facts of this case as a matter of law. It is undisputed that all of the actions on which Smith bases his conversion and negligence claims occurred in 1982 and 1983. Under the applicable statutes of limitations, Smith should have filed suit on his claims by 1985 at the very latest. Smith failed to file suit until 1989. We therefore sustain ABC/Sunwest's first and second points of error.

### *Fraudulent Concealment*

Our inquiry cannot end here. The jury found that ABC/Sunwest fraudulently concealed the conversion.[2] Independent of the discovery rule, fraudulent concealment will estop the defendant from relying on the statute of limitations as an affirmative defense to the plaintiff's claim. *Altai, Inc.*, 918 S.W.2d at 456; *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex.1983). The elements of fraudulent concealment are (1) the existence of the underlying tort; (2) the defendant's knowledge of the tort; (3) the defendant's use of deception to conceal the tort; and (4) the plaintiff's reasonable reliance on the deception. *Arabian Shield Dev. Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex.App.—Dallas 1991, writ denied). In its fourth point of error, ABC/Sunwest alleges that the evidence was legally and factually insufficient to support the jury's fraudulent concealment finding.

When presented with a "no evidence" or legal sufficiency challenge, this court will consider the evidence and all reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16. In reviewing a factual sufficiency challenge, on the other hand, this court considers and weighs all the evidence presented at trial. *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986).

We may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). This court is not a fact finder, so we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence would clearly support a different result. *Acme Boot Co., Inc. v. Montenegro*, 862 S.W.2d 806, 809 (Tex.App.—El Paso 1993, no writ).

Keeping the appropriate standards in mind, and with due deference to the jury, we must nevertheless conclude that there is no evidence in this record satisfying the elements of fraudulent concealment. Smith points us to none. Rather, Smith argues that ABC/Sunwest had a duty to inform Smith of the conversion, and fraudulently concealed the conversion from Smith by remaining silent. Mere failure to disclose a cause of action when the defendant owes no duty to disclose, however, is not fraudulent concealment. *DiGrazia v. Old*, 900 S.W.2d 499, 503 (Tex.App.—Texarkana 1995, no writ). The jury refused to find a fiduciary relationship between Smith and ABC/Sunwest that would give rise to a duty to disclose. We find no evidence in this record that ABC/Sunwest used deception to conceal the causes of action from Smith, thus we must conclude that the evidence is legally insufficient to support the jury's fraudulent concealment finding. Accordingly, we sustain ABC/Sunwest's fourth point of error.

### *CONCLUSION*

We find that the discovery rule is inapplicable to this case. We further find that there is no evidence of fraudulent concealment. Limitations therefore bar Smith's causes of action. Because these findings require us to reverse the judgment of the trial court and render a take nothing judgment, it is unnecessary for us to address the remainder of ABC/Sunwest's points of error. We reverse and render.

---

**2.** Smith did not submit an issue on fraudulent concealment of the alleged negligence.