Michael L. NORMAN, Appellant,

v.

YZAGUIRRE & CHAPA, Appellees.

No. 13–98–025–CV.

Court of Appeals of Texas,
Corpus Christi.

April 1, 1999.

Rehearing Overruled April 29, 1999.

Jerry L. Zunker, Zunker, Butler, Estes & Crane, Austin, for appellant.

Ferriel C. Hamby, Jr., Roger W. Hughes, Adams & Graham, Harlingen, for appellee.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice CHAVEZ.

Michael Norman appeals from the summary judgment entered against him on his legal malpractice claim against the law firm of Yzaguirre & Chapa. Because Norman's original petition was not filed within the limitations period, we affirm the judgment of the trial court.

In September 1992 Norman was injured by an electric shock he received from an electricity hook-up box in a trailer park. He consulted with attorney Cornelius Marsh inside the law offices of Yzaguirre & Chapa, and signed a contingent fee agreement with Marsh on October 1, 1992. Marsh filed a lawsuit on Norman's behalf in the 138th District Court of Cameron County. However, Marsh failed to respond to requests for admission filed by the defendants, and on December 3, 1993 the 138th District Court granted a summary judgment against Norman based on deemed admissions. Marsh filed motions for rehearing and for a new trial, but these motions were denied on December 29, 1993. In April 1994 Norman fired Marsh and hired new attorneys. Norman's new attorneys appealed his personal injury case to this Court, but this Court affirmed the trial court's judgment in an opinion dated August 31, 1995. Norman's new attorneys sought a writ of error from the Texas Supreme Court, but the writ was denied on March 21, 1996.

On February 14, 1997 Norman, represented by another new attorney, Jerry Zunker,

filed his original petition in the malpractice [1] case alleging causes of action for "attorney's negligence," breach of fiduciary duty, and violations of the Deceptive Trade Practices—Comsumer Protection Act (DTPA). The malpractice petition alleged that Yzaguirre & Chapa had done various things that had led Norman to reasonably believe Marsh was affiliated with the law firm of Yzaguirre & Chapa, when in fact he was not. Norman argued that Yzaguirre & Chapa should be responsible for Marsh's malpractice. Yzaguirre & Chapa filed a motion for summary judgment arguing, among other things, that Norman's malpractice petition had not been filed within the limitations period. The trial court granted a summary judgment in favor of Yzaguirre & Chapa without specifying the grounds for its judgment.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989). The limitations period for Norman's DTPA and attorney's negligence causes of action was two years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003 (Vernon Supp.1999) (negligence, legal malpractice); TEX. CIV. PRAC. & REM.CODE ANN. § 17.565 (Vernon 1987) (DTPA); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988) (legal malpractice); *Perez v. Gulley,* 829 S.W.2d 388, 390 (Tex.App.—Corpus Christi 1992, writ denied) (negligence).

■ There is conflicting authority on the applicable limitations period for a breach of fiduciary duty cause of action. Some cases, treating breach of fiduciary duty as a tort, apply the two year statute applicable to torts, section 16.003 of the Texas Civil Practice and Remedies Code. *Duzich v. Marine Office of Am. Corp.,* 980 S.W.2d 857, 872 (Tex.App.—Corpus Christi 1998, pet. filed); *Hoover v. Gregory,* 835 S.W.2d 668, 676 (Tex.App.—Dallas 1992, writ denied); *Redman Indus. v. Couch,* 613 S.W.2d 787, 789 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Other cases, noting that a cause of action for breach of fiduciary duty subsumes a claim for constructive fraud, apply the four year limitations period in section 16.004(a)(3) applicable to fraud. *In re Estate of Herring,* 970 S.W.2d 583, 587 (Tex.App.—Corpus Christi 1998, no pet.); *Spangler v. Jones,* 797 S.W.2d 125, 132 (Tex.App.—Dallas 1990, writ denied).

However, the fiduciary duty that Norman alleged was breached was the duty an attorney owes to his client. This is a claim for legal malpractice, and Norman can not evade the statute of limitations for legal malpractice by calling his cause of action by another name. *See Rodriguez v. Klein,* 960 S.W.2d 179, 184 (Tex.App.—Corpus Christi 1997, no pet.) (claims for breach of fiduciary duty, breach of the duty of good faith, and breach of implied warranty were singular claim of legal malpractice); *see also Judwin Properties, Inc. v. Griggs and Harrison,* 911 S.W.2d 498, 506 (Tex.App.—Hous. [1st Dist.] 1995, no writ) (cause of action for breach of fiduciary by law firm failed because it was means to an end of asserting legal malpractice); *see also American Med. Elecs. v. Korn,* 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied) (claim was governed by limitations applicable to malpractice tort rather than longer period for breach of contract because legal malpractice claim is in the nature of a tort). Therefore, a two year limitations period applies to all of Norman's claims.

■ Norman contends that the limitations period was tolled until his appeals from the underlying case were exhausted. In *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex. 1991), the Texas Supreme Court examined the issue of tolling limitations on a malpractice claim while the underlying case is in litigation and on appeal. Recognizing that requiring a party to file a malpractice claim before the appeals were exhausted in the underlying case would require that party to assume contradictory positions in the two cases, the court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation,

---

1. We refer to this case as a "malpractice" case, even though Norman did not explicitly state a cause of action for malpractice. This is undoubt-edly a malpractice case, and Norman uses the term "malpractice" to describe his case in his brief.

the statute of limitations on the malpractice claim is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157. The court explained "Limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first." *Id.*

However, in *Murphy v. Campbell,* 964 S.W.2d 265 (Tex.1997),[2] the Texas Supreme Court, while not explicitly overruling *Hughes,* expanded the limits on the tolling rule stated in *Hughes. Murphy* suggested that an adequate solution to the problem of taking contradictory positions in a malpractice case and an underlying case is to request an abatement of the malpractice case pending resolution of the underlying case. *Id.* at 272. *Murphy* also understood the *Hughes* rule to be based on the consideration that requiring a client to file a malpractice claim against the lawyer representing him in another case would make it virtually impossible for the lawyer to continue to represent him. *Id. Murphy* states "It (the tolling rule in *Hughes*) is expressly limited to claims against a lawyer arising out of litigation where the party must not only assert inconsistent positions but must also obtain new counsel." *Id.* at 273.

There are some troubling aspects of the court's treatment of *Hughes* in *Murphy.* The most fundamental problem is, under the statement of the *Hughes* rule given in

*Murphy, Hughes* was wrongly decided. In *Hughes,* the Hugheses wanted to adopt a baby, and their attorney, Mahaney, arranged a relinquishment of rights from the mother of a newborn. Mahaney then filed suit on the Hugheses behalf to terminate the rights of the biological mother and for adoption of the child. The biological mother had a change of heart and filed an application for writ of habeas corpus against Mahaney seeking possession of the child. Before the trial court ruled on the competing claims of the Hugheses and the biological mother, Mahaney withdrew as the Hughes's attorney be-

cause of the likelihood that he would be called as a fact witness. *Hughes,* 821 S.W.2d at 156. Although the *Hughes* opinion does not state when Mahaney withdrew, we know that it was more than two years before the Hugheses filed their malpractice claim, because the court of appeals decision in the child custody case was rendered on March 7, 1985, and the malpractice petition was not filed until May 21, 1987. If *Murphy* is correct that *Hughes* held that limitations on a malpractice claim are only tolled so long as filing the malpractice petition would require a party to obtain new counsel (because requiring a client to file a malpractice claim against the lawyer representing him in another case would make it virtually impossible for the lawyer to continue to represent him), then limitations should have run against the Hugheses' malpractice claim from the day Mahaney withdrew, and the Hugheses' claim should have been barred by limitations. Yet, the Texas Supreme Court held that the Hugheses' claim was not barred by limitations. *Id.* at 158.

*Murphy* also does not mention that the Hugheses filed an application for writ of error with the Texas Supreme Court after the court of appeals ruled against them. Rather, *Murphy* gives the impression that, after the court of appeals ruled against the Hugheses, their next move was to file their malpractice claim.[3] The fact that the Hugheses filed an application for writ of error was a determinative fact in *Hughes,* because the malpractice claim would have been timely if limitations ran from the date rehearing was overruled on the application for writ of error, but would have been untimely if limitations ran from the date of the judgment of the court of appeals.

■ Perhaps not surprisingly, a careful reading of the *Hughes* opinion fails to uncover any reference to the "forced to obtain new counsel" requirement that *Murphy* recites. Nevertheless, we are bound by *Murphy*'s

2. Murphy involved a claim of professional malpractice brought against an accounting firm based on faulty tax advise.

3. *Murphy* recites "When the biological mother had a change of heart, she sued for custody of

the child, and the plaintiffs counterclaimed for termination of her rights. The court of appeals reversed a judgment for plaintiffs, holding that they lacked standing to assert their claim. Plaintiffs then sued their lawyer for malpractice...."

exposition of the rule in this area, and will therefore toll the limitations period only where necessary to spare a party from being forced to assume inconsistent positions *and* from being forced to obtain new counsel.

The San Antonio court of appeals has recently issued an opinion following the expanded rule stated in *Murphy*. *See Swift v. Seidler*, 988 S.W.2d 860, 861 (Tex.App.—San Antonio, 1999, no pet. h.). In that case, Swift employed Seidler to file for bankruptcy on his behalf, but the petition for discharge was denied in January 1991. In March 1992 Swift fired Seidler and hired other counsel. The denial of the bankruptcy petition was affirmed by the Fifth Circuit on October 8, 1993. On October 6, 1995 Swift filed the malpractice case against Seidler that was at issue before the San Antonio court. The San Antonio court noted that *Murphy* restricted the *Hughes* rule to situations where filing a malpractice action would require a party to obtain other counsel for the underlying litigation. *Id.*, (citing *Murphy*, 964 S.W.2d at 272). Because Seidler did not continue to represent Swift in the underlying litigation, the *Hughes* rule did not apply, and limitations were not tolled until all appeals of the underlying litigation were exhausted. *Swift*, 988 S.W.2d at 861.

In this case, Norman fired Marsh and hired new counsel to represent him in April 1994. Under *Murphy*, limitations began to run on his malpractice case at that time because Norman was no longer in a position where filing a malpractice case against Marsh would force him to obtain new counsel for the underlying case. Therefore, his malpractice case, filed February 14, 1997, was not filed within the two year limitations period, and the trial court properly granted summary judgment against him.

The judgment of the trial court is affirmed.