**Paige EILAND and Elaine Eiland, Appellants,**

v.

**TURPIN, SMITH, DYER, SAXE & McDONALD and Dick Saxe, Individually, Appellees.**

No. 08–98–00279–CV.

Court of Appeals of Texas, El Paso.

March 30, 2000.

A. Craig Eiland, Attorney at Law, P.C., Houston, for Appellants.

Terry Rhoads, Julia E. Vaughan, Cotton, Bledsoe, Tighe & Dawson, Midland, for Appellees.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

ANN CRAWFORD McCLURE, Justice.

Paige Eiland ("Paige") and his wife appeal from the summary judgment entered

against him on his legal malpractice claim against the law firm of Turpin, Smith, Dyer, Saxe & McDonald ("Turpin–Smith"). The sole issue presented was the proper application of the *Hughes/Murphy* rules to the affirmative defense of limitations. Because Paige's original petition was not filed within the limitations period, we affirm the judgment of the trial court.

## SUMMARY OF THE EVIDENCE

Paige Eiland and his brother, Merwyn Eiland ("Merwyn"), were partners in a general partnership referred to as "Eiland & Eiland." Eiland & Eiland invested in several limited partnership oil and gas ventures. In July 1981, Eiland & Eiland formed a limited partnership, "EE & M," in order to invest in a partnership of Carlson Petroleum called "Durango B." EE & M secured a $300,000 letter of credit and Eiland & Eiland guaranteed $200,000 of the $300,000.

Merwyn experienced financial difficulties and on September 17, 1984, filed for bankruptcy relief pursuant to Chapter Eleven of the Bankruptcy Code. As a result, he was unable to meet his financial obligations to Eiland & Eiland. In response, Paige retained Turpin–Smith to handle the matters concerning Merwyn's insolvency. For a period of time, Paige made payments on behalf of Eiland & Eiland covering installments due on the $200,000 guarantee of the letter of credit. In November 1987, Paige attempted to pay only his one-half share of Eiland & Eiland's obligation, and in response Carlson Petroleum called the note due. The note was eventually paid by Paige.

During the course of the representation, Dick Saxe of Turpin–Smith advised Paige that he had a claim against Merwyn to recover the amounts paid on his behalf. On January 14, 1987, Merwyn filed a plan for reorganization in his bankruptcy proceeding. Under the Bankruptcy Code, any creditor asserting a claim against a debtor had to file a proof of claim or suffer discharge of the debt. Turpin–Smith did

not file a proof of claim by the June 30, 1987 deadline. Consequently, on February 22, 1988, Merwyn's plan for reorganization was confirmed without a valid claim for the money expended by Paige on Merwyn's behalf.

In the spring of 1989, Richard Davis, another attorney with Turpin–Smith, began handling Paige's file. Davis filed a lawsuit in state court seeking to recover, under a contribution theory, the amounts paid by Paige on Merwyn's share of the Eiland & Eiland letter of credit. Suit was filed in Martin County on July 19, 1989. On March 2, 1990, Merwyn filed an adversary proceeding in the bankruptcy court ("Adversary I") asserting that he was discharged from the obligation claimed by his brother Paige. Sometime in July 1990, Davis left Turpin–Smith. Paige terminated his relationship with the firm and moved his file to Davis's new office.

On July 31, 1991, the bankruptcy court ruled in "Adversary I" that Paige "failed to timely file a proof of claim," and thus his claim against Merwyn in the Martin County suit was discharged under Section 1141 of the Bankruptcy Code. However, the bankruptcy court deferred to the Martin County district court the state law procedural question of whether Merwyn had waived his affirmative defense of discharge by failing to timely plead it. Thereafter, Paige gave notice of his malpractice claim against Turpin–Smith in a letter dated October 10, 1991. In his letter, Paige asserted that Turpin–Smith failed to properly file a proof of claim in the bankruptcy proceeding. The bankruptcy court entered a final order in "Adversary I" on November 15, 1991.

On May 6, 1993, the Martin County district court ruled on the issue deferred to it by the bankruptcy court, granting partial summary judgment in favor of Merwyn and finding that he had not waived his affirmative defense of bankruptcy discharge. On May 7, 1993, Merwyn instituted a second proceeding in bankruptcy

court ("Adversary II"). Relying on the partial summary judgment granted in the Martin County lawsuit, Merwyn asked the bankruptcy court to order Paige to dismiss the Martin County lawsuit. Paige and Merwyn settled the controversy on June 10, 1994, and Paige non-suited the action on July 11, 1994.

Paige filed his malpractice claim on August 31, 1995. Turpin–Smith moved for summary judgment based upon the affirmative defense of limitations. Without specifying any grounds for its order, the trial court granted Turpin–Smith's motion.

## STANDARD OF REVIEW

We review this appeal under the three-prong standard enunciated in *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). The burden rests on the movant to demonstrate that there are no issues of material fact and that it is entitled to judgment as a matter of law. We take as true all evidence favorable to non-movant, indulge every reasonable inference, and resolve all doubts in favor of the non-movant. *Id.* When a summary judgment is based on an affirmative defense, such as limitations, the movant must conclusively establish that the limitations period expired before the suit was filed. *See Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 80–81 (Tex.1989). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, an appellate court will affirm a summary judgment if any of the theories advanced are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

## LIMITATIONS

■ In his sole point of error, Paige argues that the trial court erroneously found that the statute of limitations barred his malpractice claim. Relying upon *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex.1991), Paige asserts that the limitations period was tolled and did not begin to run until August 8, 1994, the

date that the order non-suiting the Martin County action became final and non-appealable. Although Paige complains that the trial court did not take his version of the facts as true, an independent review of the record reveals that the parties are in agreement about the basic facts. What remains is solely a dispute about the law governing this case. The parties agree that Paige's claims for malpractice are governed by a two-year statute of limitations. *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988), *citing* TEX.CIV.PRAC. & REM. CODE ANN. § 16.003 (Vernon 1986).

### *Legal Injury*

■ The accrual of a cause of action is a question of law, which we review *de novo*. *Willis*, 760 S.W.2d at 644. A cause of action for legal malpractice accrues when the client sustains a legal injury. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). The general rule is that legal injury occurs when the tort is committed, notwithstanding the fact that the damages or their extent are not ascertainable until a later date. *Atkins v. Crosland*, 417 S.W.2d 150, 153 (Tex.1967); *Sunwest Bank of El Paso v. Basil Smith Engineering Co., Inc.*, 939 S.W.2d 671, 674 (Tex.App.—El Paso 1996, writ denied). Under ordinary circumstances, the statute of limitations begins to run at the moment of the injury. *Pack v. Taylor*, 584 S.W.2d 484, 486 (Tex.Civ. App.—Fort Worth 1979, writ ref'd n.r.e.). The date of the legal injury is not to be confused with the time it is discovered or the date when actual damage is fully ascertained. *Id.* In a legal malpractice case, the attorney's conduct must raise only a risk of harm to the client's legally protected interest for the tort to accrue. *Zidell v. Bird*, 692 S.W.2d 550, 557 (Tex.App.—Austin 1985, no writ).

The undisputed facts establish that Paige hired Turpin–Smith to pursue his claim for reimbursement from his insolvent brother, Merwyn. Merwyn filed a plan for reorganization, which required that all creditors be listed or their claims

discharged. Turpin–Smith did not file a proof of claim by the mandatory deadline of June 30, 1987. Accepting as true Paige's contention that this constituted malpractice, we conclude that Paige sustained legal injury when the bankruptcy court no longer had the power to modify the reorganization plan so as to include a late-filed proof of claim. For the sake of this appeal, we will assume that date to be February 22, 1988, when Merwyn's plan for reorganization was confirmed.

### The Discovery Rule

 While under ordinary circumstances the limitations period would run from the date of legal injury, the discovery rule has been applied to legal malpractice cases. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990). The discovery rule tolls the running of the statute of limitations until the injured party discovers or reasonably should have discovered the facts establishing his cause of action. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Haussecker v. Childs,* 935 S.W.2d 930, 934 (Tex.App.—El Paso 1996), *aff'd,* 974 S.W.2d 31 (Tex.1998). The undisputed facts establish that Paige was aware of the bankruptcy court's July 1991 ruling in Adversary I, which established that Paige's claims were barred due to his failure to file a proof of claim. Additionally, the record reflects a letter dated October 10, 1991, in which Paige asserts that Turpin–Smith breached its duty by not filing a proof of claim. From this evidence, we conclude that Paige was aware of the facts establishing his cause of action against Turpin–Smith, no later than October 1991.

### The Hughes Rule

Ordinarily the limitations period for a legal malpractice claim would run from the moment that the legal injury is discovered, but Paige contends his case is governed by the specialized tolling rule established in *Hughes v. Mahaney & Higgins,* 821 S.W.2d 154 (Tex.1991). In *Hughes,* the Supreme Court held that "when an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Id.* at 157. The *Hughes* rule seeks to avoid the harsh results that the legal injury and discovery rules can create. These rules may force a client to bring suit against an attorney when the client discovers the injury regardless of whether the attorney is still prosecuting or defending the client's claim. *Id.* at 156–57. The result when the attorney is still prosecuting the client's underlying claim is that the client is forced to assert "inherently inconsistent litigation postures," arguing the propriety of counsel's actions in the underlying suit and impropriety in the malpractice suit. *Id.* Thus, the *Hughes* Court concluded that the limitations period should be tolled for the second cause of action "because the viability of the second cause of action depends on the outcome of the first." *Id.* at 157.

### Murphy's Law

In a subsequent case, the Supreme Court cautioned that *Hughes* is not so broad as to apply to any situation requiring a client to choose between inconsistent positions; rather, it is "limited to claims against a lawyer arising out of litigation where the party must not only assert inconsistent positions but must also obtain new counsel." *Murphy v. Campbell,* 964 S.W.2d 265, 272–73 (Tex.1997). According to the *Murphy* Court's interpretation of *Hughes,* the mere fact that a client must take inconsistent litigation positions is not dispositive of when the tolling rule applies. The decisive element is whether the client is forced to obtain new counsel. As the *Murphy* Court explained:

> We expressly limited the rule in *Hughes* to attorney malpractice in the prosecution or defense of a claim that results in litigation. In such circumstances, to re-

quire the client to file a malpractice claim against the lawyer representing him in another case would necessarily make it virtually impossible for the lawyer to continue his representation. The client's only alternative would be to obtain other counsel. That consideration, coupled with the necessity of taking inconsistent positions, persuaded us to adopt a tolling rule in *Hughes*. We restricted it to the circumstances presented.

*Id.* at 272.

### The Aftermath of the Hughes/Murphy Rules

Several cases have emerged in which the intermediate courts have struggled with the proper application of the *Hughes/Murphy* rules. In *Guillot v. Smith*, the issue was whether limitations was tolled during the period following the act of malpractice if the attorney continued to represent the client in a bankruptcy proceeding. *Guillot v. Smith*, 998 S.W.2d 630 (Tex.App.— Houston [1st Dist.] 1999, no pet.). Guillot owed substantial amounts to the Internal Revenue Service and retained Smith to represent her in bankruptcy proceedings. Smith advised Guillot to file for Chapter 13 protection and all went well for about two years until Guillot was unable to make the payments under the Chapter 13 plan. In November 1994, Guillot retained Smith again. Smith advised her to convert from Chapter 13 to a Chapter 7 proceeding. According to Smith, this would result in a discharge of her remaining tax debt "except $2,300.00 for later years." Guillot followed this advice, which turned out to be erroneous. On June 26, 1995, Guillot received notice that the IRS intended to levy on her property. Smith advised Guillot of his mistake, but told her he could remedy the problem. Between 1995 and 1996, Smith continued to represent Guillot. Eventually, Smith advised her to file another Chapter 13 plan, but Guillot rejected the advice and sued Smith instead. Suit was filed on November 4, 1997. Smith defended on limitations, arguing that the

suit was filed more than two years after the discovery date of June 26, 1995. The trial court granted his motion for summary judgment.

■ The First District Court of Appeals reversed, concluding that the facts presented the classic *Hughes* scenario.

[I]f we held that the statute of limitations began to run from the date Guillot received the letter from the IRS, she would have been in a difficult position. At the time the statute of limitations would have run under the discovery rule, Guillot's Chapter 7 bankruptcy proceeding and her dealings with the IRS had not been resolved. Thus, Guillot would have been forced to choose between Smith's continued representation and discharging Smith in order to file a malpractice claim against him. *See Murphy*, 964 S.W.2d at 272. As a result, Guillot would have been forced into taking inconsistent positions in the two proceedings. *Id.; Hughes*, 821 S.W.2d at 157. This is the exact situation the Supreme Court intended to prevent in *Hughes*.

*Guillot*, 998 S.W.2d at 633. If an attorney commits malpractice while litigating a claim of the complainant, the complainant may sit on his hands and do nothing until all appeals are exhausted. Here, however, Paige terminated his relationship with Turpin–Smith in July of 1990 and discovered his injury no later than October 1991. This was nearly four years before he filed his malpractice suit. Can Paige avail himself of *Hughes* after he fired his allegedly negligent attorneys and after he became aware of their negligence? *Guillot* doesn't answer this question. The next case does.

In *Swift v. Seidler*, 988 S.W.2d 860 (Tex. App.—San Antonio 1999, pet. denied), the issue was whether *Hughes* applied when a client had fired his attorney and knew about the malpractice. In 1990, Swift hired Seidler to handle his bankruptcy application. On January 15, 1991, the bankruptcy court denied an exemption for

Swift's Individual Retirement Account; on January 30, it orally denied his petition for discharge. On January 8, 1992, Swift wrote a letter expressing his displeasure with Seidler's services and then fired him in March. On April 16, 1992, Swift joined a malpractice suit filed by the bankruptcy trustee in bankruptcy court; he also filed suit for malpractice in Bexar County. Swift nonsuited the state claim on September 15, 1992 and dismissed his bankruptcy claim without prejudice on January 25, 1993. The trustee pursued the suit and settled. On October 8, 1993, the Fifth Circuit affirmed the denial of discharge, and in a later opinion upheld the denial of the exemption for Swift's IRA. Swift then filed a new malpractice claim on October 6, 1995. Swift argued that he timely filed suit because he filed within two years of the Fifth Circuit's rulings. The San Antonio Court rejected Swift's attempt to fit within *Hughes*.

> The circumstances of Swift's case are dissimilar from those in *Hughes*. Although the bankruptcy matter in which Seidler originally represented Swift ultimately resulted in litigation, Seidler did not represent Swift in that litigation, unlike the lawyers in *Hughes*. Thus, Swift would not have been put in the precarious position of calling his lawyer as a witness in bankruptcy court; Seidler was no longer his lawyer. Furthermore, to avoid taking inconsistent positions, Swift could have moved to abate the malpractice case pending resolution of the bankruptcy appeal. *See Murphy,* 964 S.W.2d at 272.

*Swift,* 988 S.W.2d at 862. We find this case to be more closely analogous. Swift fired his attorney and was aware of the malpractice, but he did nothing. Swift argued that he could "ride" under the pending bankruptcy appeals on the denial of the discharge and IRA exemption. According to the court, Swift misconstrued the *Hughes* language to make the "incon-. sistent litigation postures" the dispositive legal element. Under this analysis, a complaining client may only avail himself of

the special tolling rule if the client can show that he had a direct and present conflict with suing his attorney at the time in question. Under the facts presented, no conflict existed because Swift had already fired his attorney. Swift could have sued Seidler in state court and still could have called Seidler as a witness in the bankruptcy court. *Swift,* 988 S.W.2d at 862.

Similarly, in *Norman v. Yzaguirre & Chapa,* 988 S.W.2d 460 (Tex.App.—Corpus Christi 1999, no pet.), the issue was whether limitations were tolled after the client employed new counsel to represent him in the underlying action. In September 1992, Norman retained Yzaguirre & Chapa (Chapa) to pursue his personal injury claims; however his suit was dismissed on December 3, 1993, due to a failure to respond to requests for admissions. Chapa filed motions for rehearing and new trial, but both were denied on December 29, 1993. In April 1994, Norman fired Chapa and hired new counsel. The new attorneys appealed the rulings, but both were affirmed on August 31, 1995. The application for writ of error was denied on March 21, 1996. On February 14, 1997, Norman, represented by yet another attorney, filed his suit for malpractice against Chapa. Summary judgment was granted on limitations and Norman appealed.

The Corpus Christi Court of Appeals recited the *Hughes* rule and then discussed the impact of *Murphy*.

> *Murphy* suggested that an adequate solution to the problem of taking contradictory positions in a malpractice case and underlying case is to request an abatement of the malpractice case pending resolution of the underlying case. ... *Murphy* also understood the *Hughes* rule to be based on the consideration that requiring a client to file a malpractice claim against the lawyer representing him in another case would make it virtually impossible for the lawyer to continue to represent him.

*Norman*, 988 S.W.2d at 462. The Court concluded that *Murphy* expressly limited the *Hughes* tolling rule "to claims against a lawyer arising out of litigation where the party must not only assert inconsistent positions but must also obtain new counsel." *Norman*, 988 S.W.2d at 462

The Court then went on to point out the inconsistencies between *Hughes* and *Murphy*, noting that under *Murphy*, *Hughes* was wrongly decided. *Norman*, 988 S.W.2d at 462. In *Hughes* the attorney withdrew, at the very least, more than two years before the Hugheses filed their malpractice claim. *Id.* The Court observed that under the "forced to obtain new counsel" element of *Murphy*, the limitations period should have run from the day the attorney withdrew, and thus the Hugheses claim was time barred. *Id.* Finally the Court pointed out that "a careful reading of the *Hughes* opinion fails to uncover any reference to the 'forced to obtain new counsel' requirement that *Murphy* recites." *Id.* The Court somewhat reluctantly concluded that *Murphy* was controlling such that the limitations period would be tolled only where necessary to spare a party from being forced to assume inconsistent positions *and* from being forced to obtain new counsel. *Id.* at 462–63. Applying this rule to the facts before them, the Court determined:

> In this case, Norman fired [Chapa] and hired new counsel to represent him in April 1994. Under *Murphy*, limitations began to run on his malpractice case at that time because Norman was no longer in a position where filing a malpractice case against Marsh would force him to obtain new counsel for the underlying case. Therefore, his malpractice case, filed February 14, 1997, was not filed within the two year statute of limitations period, and the trial court properly granted summary judgment against him.

*Norman*, 988 S.W.2d at 463.

Since *Swift* and *Norman*, several more intermediate court decisions have refused to toll the statute of limitations when the client has obtained other counsel. *See Apex Towing Co. v. Tolin*, 997 S.W.2d 903, 905 (Tex.App.—Beaumont 1999, pet. filed); *Nunez v. Caldarola*, 2 S.W.3d 755, 759 (Tex.App.—Corpus Christi 1999, pet. filed); *Brents v. Haynes & Boone*, 10 S.W.3d 772, 777–78 (Tex.App.—Dallas pet filed); *but see, Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex.App.—Houston [14th Dist.] 1999, pet. filed). The emerging majority view is that the equitable tolling rule announced in *Hughes*, and further explained in *Murphy*, only applies when the client would be forced to choose between suing the attorney who was still litigating the client's claim, thereby losing the attorney's services, or allowing limitations to run against the client's malpractice claim. *Murphy*, 964 S.W.2d at 272. If the client chooses to retain the services of the attorney in the underlying suit, despite the possible malpractice claim, he may rely on the *Hughes* tolling rule. If, however, the relationship between the client and attorney comes to an end before the underlying litigation is concluded, the statute of limitations begins to run when the relationship is terminated.

We are aware that the Fourteenth Court of Appeals has taken a contrary position on this issue in *Edwards*, 9 S.W.3d at 314. There, Edwards brought suit against Kaye for the erroneous advice that a supersedeas bond was unnecessary following the entry of judgment against Edwards in the underlying case. Kaye continued to represent Edwards in the appeal from the adverse judgment, but his relationship with Edwards began to deteriorate over the fees Edwards owed him. Kaye advised Edwards that he needed to retain a new attorney once the court of appeals issued its ruling. The First Court of Appeals issued a judgment adverse to Edwards, and Kaye's representation ended on August 20, 1992. Edwards continued to pursue his appeal. The Texas Supreme Court reversed and remanded the case. The First Court of Appeals then issued a new opinion, and the application for writ of

error was denied on August 1, 1995. Edwards filed his malpractice claim on July 31, 1997. Summary judgment was granted on limitations.

The Fourteenth Court held that the statute of limitations was tolled even though Edwards' attorney had withdrawn more than two years prior to the filing of his malpractice claim. *Id.* at 314. In arriving at its conclusion, the court relied heavily on the fact that in both *Hughes* and *Edwards,* the attorneys chose to withdraw more than two years prior to the filing of the malpractice action. *Edwards,* 9 S.W.3d at 313. Based on this fact, the Court distinguished *Murphy:*

> The *Murphy* court, however, apparently failed to acknowledge the actual circumstances in *Hughes.* In *Hughes,* as in our case, the attorney withdrew as the Hugheses' attorney over two years before the Hugheses filed their attorney malpractice claim. *Hughes,* 821 S.W.2d at 156. Therefore, if we add the fourth prong [the forced to obtain new counsel prong] that the *Murphy* court asserts was the basis of their holding in *Hughes* to the facts of *Hughes,* the Hugheses' claim itself would have been barred because the statute of limitations would have run prior to the filing of their attorney malpractice claim.

*Id.* The *Edwards* Court reasoned that the judicial gloss placed on *Hughes* by *Murphy* constituted judicial dictum because *Murphy* involved accountant malpractice and did not require the Court to address the scope or effect of the *Hughes* rule·on attorney malpractice.

> In *Murphy,* the Supreme Court was only required to hold that *Hughes* was inapplicable to accountant malpractice claims, based on the issue and facts there presented including the differentiated professional duties. Therefore, the court's explanation and addition to their *Hughes* holding, requiring a claimant to be placed in a position that would force him to fire his counsel and hire new, was, in our view, dictum. We will even

assume this dictum was judicial dictum because it came from our highest court. However, as we have already shown, the *Murphy* court did not note that the Hughes' attorney had withdrawn from representation, and thus the Hugheses were not then forced into the position requiring them to obtain new counsel. *See Hughes,* 821 S.W.2d at 156. Because the *Murphy* court's modification of the *Hughes* test, if applied to the facts of *Hughes,* would result in an opposite result in *Hughes,* we find the dictum to be inapplicable and not binding on our facts.

*Id.* at 314.

We decline to follow the Fourteenth Court's reasoning, because we conclude that the Supreme Court meant what it said in *Murphy.* The opinion expressly shows that the *Murphy* Court reviewed and considered the facts in *Hughes.* Regardless of whether the Court realized that its explanation of the tolling rule would negate the result in *Hughes,* it seems clear that a majority of the Court deliberately expressed their opinion about the scope, effect, and meaning of *Hughes.* *See Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764, 773 (Tex.1964)(holding that judicial dictum should be followed unless found to be erroneous); *see also, Railroad Commission v. Aluminum Co. of America,* 380 S.W.2d 599, 601 (Tex.1964)(declaring that dictum in earlier case was deliberately made to put others on notice of the Court's intent). We cannot say that the Supreme Court's remarks in *Murphy* were unintentional, erroneous, or without any sound policy supporting them, although we may disagree. Instead we prefer to follow the rule that as an intermediate court, when faced with inconsistent opinions of the Supreme Court, we rely on the most current opinion and leave it to the Supreme Court to distinguish or explain earlier cases. *See Wynn v. State,* 847 S.W.2d 357, 362 (Tex.App.—Houston [1st Dist.] 1993), *aff'd,* 864 S.W.2d 539 (Tex.Crim.App.1993); *see also, Lofton v.*

*Texas Brine Corp.,* 777 S.W.2d 384, 386 (Tex.1989)(explaining that Supreme Court need not defend its opinions from criticism from the courts of appeals).

Recognizing that this issue divides our Court, as evidenced by the dissenting opinion, we express our hope that the Supreme Court will revisit the issue to address the struggles of implementation faced by the intermediate courts.[1] While we sit as justices, we are attorneys still. And we are loathe to cloak our profession with special protection while other professions are not similarly protected just because we have the ability to do so. Such a result can only be perceived by an already jaded public to smack of self-serving judicial activism.

### Applying the Rules

 Paige contends that the *Hughes* rule applies and that the statute of limitations was tolled until all appeals were exhausted in the Martin County suit. Anything less, he argues, would have forced him to adopt inherently inconsistent litigation positions. In his brief, Paige tracks the language of the rule, pointing out that the Martin County suit was the "underlying action," that Turpin–Smith initiated the suit, and that the suit was pending until July 11, 1994, well within the two-year statute of limitations. While we agree with his factual premise, we disagree with his legal conclusion. The *Hughes* rule only applies to claims against a lawyer arising out of litigation where the client must not only assert inconsistent positions but must also obtain new counsel. *Murphy,* 964 S.W.2d at 273. The undisputed facts establish that Turpin–Smith did initiate the Martin County suit in July 1989, but that Paige terminated his relationship with Turpin–Smith in July 1990, when he moved his file over to Richard Davis's

office. As of July 1990, Turpin–Smith was not litigating Paige's underlying claim and thus the *Hughes* rule cannot be invoked to toll the running of the statute of limitations against the malpractice claim. *See Swift,* 988 S.W.2d at 862; *Norman,* 988 S.W.2d at 463; *Apex Towing Co.,* 997 S.W.2d at 905; *Nunez,* 2 S.W.3d at 759; *Brents,* at 777–78.

### CONCLUSION

We pause to summarize the foregoing legal analysis. The summary judgment proofs establish that Paige sustained legal injury on or about February 22, 1989; Paige terminated his relationship with Turpin–Smith in July 1990; and by letter dated October 10, 1991, Paige had complained to Turpin–Smith that it had failed to file the necessary proof of claim in the bankruptcy court. Because we conclude that the *Hughes* rule is inapplicable, the limitations period began to run on the date that the legal injury was discovered, in October of 1991. Paige's malpractice claim was filed on August 31, 1995, well beyond the two-year statute of limitations. We therefore agree with the trial court's legal conclusion that Paige's malpractice claim accrued more than two years before he filed his claim, and thus his claim is time barred. Paige's sole point of error is overruled, and the judgment is affirmed.

SUSAN LARSEN, Justice, dissenting.

I respectfully dissent. Although I believe the majority has done a thorough job analyzing opinions from the various courts of appeals which attempt to reconcile *Hughes* and *Murphy,* it fails to recognize that the two cases cannot be reconciled, for if the requirements of *Murphy* had been applied in *Hughes,* the very tolling doctrine it announced would have been

---

1. We find particularly appealing the dissent's argument that we should not apply *Murphy* retrospectively because Paige relied on *Hughes* to his detriment. However, this concern was not raised by point of error in this Court. *See Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986)(court of appeals may not reverse a trial court's judgment in the absence of properly assigned error); Tex. R.App.P. 33. Further, we conclude that such an argument is more properly brought before the Supreme Court. *See Sanchez v. Schindler,* 651 S.W.2d 249, 254 (Tex.1983).

inapplicable. Moreover, I believe the majority opinion has focussed so intently on the cases applying *Murphy*, it has neglected to recognize the public policy which should be a touchstone in attempting to resolve the conflict we are faced with here.

### Hughes, not Murphy, is directly on point and should control

This is the *Hughes* exception to the two-year statute of limitations in legal malpractice claims, as announced by the Supreme Court of Texas:

> [W]e hold that the statute of limitations was tolled until all of the Hugheses' appeals in the [the underlying] termination action were exhausted.[1]

The court stated two reasons for recognizing the exception: requiring a malpractice suit to be filed earlier would result in the parties having to take inherent inconsistent positions,[2] and "limitations are tolled for the second cause of action because the viability of the second cause of action depends on the outcome of the first."[3] The rule was clearly defined, based on two independent policy considerations, and never hinted that the client-plaintiffs must retain their original attorney throughout litigation for tolling to apply. Indeed, the Hughes' attorney withdrew as their representative more than two years prior to filing of their malpractice suit.[4] *Murphy v. Campbell*[5], by restricting this tolling doctrine to the period in which a defendant attorney continues to represent client-plaintiffs, wholly ignored both the facts in

*Hughes* and the second policy consideration upon which the doctrine was grounded.

### Edwards v. Kaye

In the recent case of *Edwards v. Kaye*,[6] the Houston Fourteenth court examined the same question we face today:

> [W]hen a lower court is faced squarely with clearly applicable precedent, and a subsequent opinion by the same higher court attempts to modify by dicta its own precent, which road are we or the trial court to take?[7]

*Edwards*, an attorney malpractice case with facts similar to both *Hughes* and the case before us, engages in a careful analysis which neither the *Murphy* opinion nor the cases following it have applied. It outlines the rules of stare decisis, noting that it "only applies if the facts on which the prior case is founded are substantially the same as those in the subsequent suit."[8] It further notes that dicta, even judicial dicta, although persuasive and a source of guidance, is not binding if erroneous under the facts before the court.[9] Thus, because *Murphy* involved account malpractice and its language limiting the *Hughes* rule (which applies only to attorneys) was not necessary to the outcome of the case, *Edwards* comes to the following conclusion:

> Because the *Murphy* court's modification of the *Hughes* test, if applied to the facts of *Hughes*, would result in an opposite result in *Hughes*, we find the dictum

1. *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex.1991).

2. *Id.* at 157.

3. *Id.*

4. *Id.* at 156. The court does not specify the exact date on which the attorney withdrew, an indication it was not dispositive of any issue on appeal. Nevertheless, from the record it is clear he ceased to represent the Hugheses more than two years before the malpractice suit was filed. He withdrew "[b]efore the motion to dismiss was heard,

and denied" by the trial court. The Waco court of appeals reversed the trial court's decision on March 7, 1985. The malpractice suit was filed on May 21, 1987.

5. 964 S.W.2d 265, 272 (Tex.1997).

6. 9 S.W.3d 310, 314 (Tex.App.—Houston [14th Dist.] 1999, pet. filed).

7. *Id.* at 313–14.

8. *Id.* at 313.

9. *Id.*

to be inapplicable and not binding on our facts.[10]

I would hold, as the *Edwards* Court did, that the statute of limitations against Turpin–Smith was tolled until exhaustion of the underlying suit. As the majority has concluded that date was July 11, 1994, I would conclude that the malpractice suit against Turpin–Smith was not barred by limitations.

### Ripeness and judicial economy

It bears repeating that *Murphy* (and the cases applying it) recognize only one of two policies upon which *Hughes* was based, and ignore the second, equally important one: a case must be ripe before it is litigated. *Hughes* acknowledges that a legal malpractice claim is premised on a bad outcome in the underlying representation; to require a client to file suit before the outcome is certain encourages unnecessary litigation. Under *Murphy*, a plaintiff must file suit before the claim is ripe, and indeed, in some cases where no suit need ever be filed at all. Certainly some potential malpractice actions may be resolved favorably to the client in the course of appellate proceedings or retrial; certainly others may find the malpractice, although present, was harmless. In these cases, litigation against the former attorneys will ultimately prove needless, but *Murphy* nonetheless requires it.

Moreover, the solution *Murphy* suggests for this dilemma, abatement of the malpractice case pending resolution of the underlying suit,[11] underscores my point that a malpractice case filed before underlying claims are resolved is not ripe. The law generally requires ripeness before a suit may be brought.[12] Why apply a different rule here? I conclude that policy considerations, as well as long-standing legal principles on ripeness of a controversy, favor the original *Hughes* tolling doctrine, without its narrow *Murphy* interpretation.

### Reliance on plain language of Hughes

Finally, I observe that the Eilands filed suit in 1995, when the plain language of *Hughes* taught that the statute of limitations in an attorney malpractice suit was tolled until all appeals were exhausted.[13] *Murphy* was not decided until 1997. Although I recognize that the general rule is that decisions of the Supreme Court apply retrospectively,[14] this is not always true. Where there is extensive public reliance on the old law, and a change is unforeseen, fairness and policy preclude retroactivity.[15] I would hold that the Eilands justifiably relied on what appeared to be a settled exception to the statute of limitations, decided in the highest civil court of the state on facts clearly applicable to their case.

### CONCLUSION

For these reasons, I dissent.

10. *Id.* at 314–15.

11. *Murphy*, 964 S.W.2d at 272.

12. *Id.* at 275 (Spector, J. dissenting); *see Casarez v. NME Hospitals, Inc.*, 883 S.W.2d 360, 366 (Tex.App.—El Paso 1994, writ dism. agr.) (discovery rule does not require lawsuit be brought on unconfirmed fear of HIV exposure before positive test results are possible; to require otherwise would encourage needless litigation); *City of El Paso v. Madero Dev.*, 803 S.W.2d 396 (Tex.App.—El Paso 1991, writ denied) (court did not have jurisdiction to review adverse condemnation judgment where landowner had not sought zoning variance; case was not ripe until administrative decision was final).

13. *Hughes*, 821 S.W.2d at 156.

14. *Sanchez v. Schindler*, 651 S.W.2d 249, 254 (Tex.1983).

15. *Id.*